## MACINTOSH *vs.* THURSTON and others.

1.  A purchase money mortgage has preference over lien claims for work done and materials furnished in buildings and improvements put upon the mortgaged premises by the purchaser, between the execution of the contract of purchase and the conveyance, not only to the extent of the purchase money, but also for all advances made in accordance with the contract of purchase, for building the houses, improving the grounds, and paying taxes and municipal assessments.   It does not affect the priority of the lien of the mortgage, that the property had been conveyed to another before the conveyance to such purchaser, and that the money was advanced by a third person.

2.  The mortgage and deed being delivered simultaneously, the seizin of the purchaser was a merely transitory one, to which no lien could attach.

3.  An agreement by the vendor, under contract of purchase, to furnish the vendee funds for the erection of buildings upon the premises, is not the consent intended by the fourth section of the mechanics' lien law.

4.  But if it was such consent, and such consent need not be recorded, the lien in such case must be subject to all liens incurred by the purchaser, which by the contract were to be discharged of record before conveyance.

5.  A lien will not attach to premises when the owner is not made party to the suit.

On final hearing.

*Mr. J. W. Magie*, for complainant.

*Mr. A. Dutcher*, for defendant, Graham.

Macintosh *v.* Thurston.

THE CHANCELLOR.

The only question raised in this cause, (which is submitted on a "state of the case" agreed upon,) is whether the complainant's mortgage is entitled to priority over the lien claim of Preston Graham. By an agreement made between Edgar Tucker, trustee, and Charles C. Thurston, dated June 24th, 1871, the former agreed to sell, and the latter to buy four lots of land therein described, situate in the city of Elizabeth, at the price of $6000 for the lot on which the complainant's mortgage is, and $2750 for each of the others; on these conditions Thurston was forthwith to commence the erection, on each of the lots, of a good and substantial dwelling-house, of a character and description agreed on between him and Tucker, and in conformity with plans made by an architect, and signed by the parties. To enable Thurston to erect and finish the houses, with the walks and the front and rear yards, Tucker agreed to lend him $6000 towards the erection and finishing of the house on the lot described in the complainant's mortgage, and $4200 towards the erection and finishing of each of the houses on the other lots. These moneys, which were to be paid only on a certificate of the architect that the work had been done in such manner as to entitle Thurston to them under the agreement, were to be paid in installments as the work progressed. It was further agreed, that when the houses, (with the walks and yards,) or any of them, should be completely finished, ready for occupation, and when the certificate of the architect should be produced to that effect, and when all taxes, assessments, and water rates, assessed or imposed upon the premises, or any part thereof, after the date of the agreement, should have been paid, and also the assessment which might be imposed or assessed for or on account of the wooden pavement then lately laid down in Newark avenue, and when all liens affecting the premises, or any part thereof, incurred by Thurston, should have been discharged of record, then Tucker should, on the execution and delivery of the bonds and mortgages thereinafter mentioned, convey the premises by warranty deed, with the usual full

covenants, free from all encumbrances. And it was further agreed, that to entitle Thurston to such deed, he should at the time of the delivery thereof, execute and deliver to Tucker, bonds and mortgages as follows : On the lot described in the complainant's mortgage, a mortgage for the payment of $12,000, and on each of the other lots, a mortgage for the payment of $6950, all of which were to bear date on the day of the delivery of the deeds of conveyance, and the money secured thereby was to be payable in one year, with interest at seven per cent. per annum. It was also stipulated that Tucker would, in the place of any and each of the above mentioned mortgages for $6950, accept $4500 in cash and a second mortgage on the premises for $2450, the prior mortgage, however, not to exceed $4500 ; and that, in the place of the mortgage for $12,000, he would accept $7000 in cash and a second mortgage for $5000, payable as provided for the mortgage in lieu of which it was to be taken, and to contain the same covenants and conditions which it was agreed that that mortgage should contain ; but the mortgage for $5000 was to be subject to no other prior lien than a mortgage for $7000. Tucker was to have interest at seven per cent. per annum, on the purchase money of the land and the advances. It was also agreed that Thurston should not sell, assign, or dispose of the agreement or his interest therein, without the written consent of Tucker first obtained, and that the latter should not be required to make the loans, or any part of them, or the deeds, to, or accept the bonds and mortgage of, any other party or parties, unless he should elect so to do. Thurston was forthwith to commence the erection of the houses, and to proceed with them without unnecessary delay, and furnish all materials, and completely erect and finish the buildings, with the walks and yards, on or before the 1st of February, 1872, as to the lot described in the complainant's mortgage, and as to the others, on or before the 1st of December, 1871. And in case the work of erecting the houses should, in the opinion of the architect, be unreasonably delayed, or in case Thurston should sell or assign his interest in or under the

agreement, without the written consent of Tucker, the latter should have the right, and he was thereby expressly authorized and empowered, to sell the whole of the premises, together with the unfinished buildings thereon, at public auction, to the highest bidder, giving to Thurston fifteen days' notice, and advertising the property for the same period of time in one of the public newspapers printed in Elizabeth. Tucker was to be allowed to bid at such sale, and the sale was to be a perpetual bar against any claim to be made by Thurston, or any one claiming under him, for any of the buildings or erections, and any claims under that agreement. And it was agreed that on such sale, Thurston would forthwith quit and abandon the premises, and the agreement was thenceforth to cease and determine, except that, in case the sale should produce more than sufficient to pay the contract price of the lots and the loans which should then have been made, and interest, and expenses of insurance and costs of sale, the excess should be paid to Thurston; but if there should be any deficiency, the latter was to pay the amount of it on demand.

When this agreement was made, Tucker was not the owner of the property. He conveyed it to Charles W. Pleasants by deed, dated May 15th, 1871, but not recorded till July 7th, 1871.

By a contract dated July 10th, 1871, and filed on the 28th day of that month, made between Thurston and Graham, the latter agreed to do the carpenter work and painting and find the materials therefor, of the house to be erected on the lot described in the complainant's mortgage. The price to be paid him was $6000. The work was begun immediately and was nearly finished before the 1st of February, 1872, there being left unfinished then, only work to the amount of about $100, which was completed in about two months thereafter. There was extra work to the amount of $36.09. So that the whole amount due Graham was $6036.09. On this, payments were made, leaving a balance of $1586.09. For this sum he filed a claim of lien, on the 4th of September, 1872,

on the premises described in the complainant's mortgage, against Thurston, as builder and owner. On the same day, a summons was issued. At the December Term, 1872, of the Union Circuit Court, a general and special judgment was entered in the suit, for $1689.48.

Pleasants, on the 21st of March, 1872, conveyed the premises to Thurston by deed recorded on that day, but dated February 1st, 1872. Simultaneously with this conveyance, Thurston gave to the complainant his bond and mortgage on the premises, dated on the 1st of February, 1872, to secure the payment of $6200 in one year, with interest at the rate of seven per cent. per annum. This mortgage was recorded on the 27th day of March, 1872. Thurston made a mortgage on the premises to the New York Life Insurance Company for $8000, dated March 8th, 1872, which was recorded on the 21st of the same month. The latter mortgage and the complainant's mortgage were given to secure the purchase money of the property, and the money advanced under the agreement to Thurston to pay for building the house, and money advanced to pay city assessments upon the property. They were both delivered at the time of the delivery of the deed, which was on the 21st of March, 1872. By complainant's consent, the mortgage of the life insurance company became a lien prior to his mortgage. Graham insists that his claim of lien has priority over the complainant's mortgage.

The complainant's mortgage, to the extent of the amount of the purchase money of the land, $6000, is unquestionably entitled to priority over the mechanic's lien. *National Bank of the Metropolis* v. *Sprague*, 5 *C. E. Green* 13 ; *Strong* v. *Van Deursen*, 8 *C. E. Green* 369 ; *Phillips on Mechanics. Liens*, §§ 243, 248.

It covers also, advances to build the house on the mortgaged premises and to improve the grounds and to pay the taxes and municipal assessments which had been imposed and were liens upon the property. The only question between the parties is, whether as to these moneys, it is also entitled to priority.

The taxes and assessments were, by law, encumbrances prior to any other lien. The advances were made under an agreement by which Thurston was to build a house on the premises, but by which it was also agreed, that no title to the property should pass to him, except subject to a lien for the payment of these advances. The equity which secures to a vendor his purchase money against a mechanic's lien for work done and materials furnished in building on the land before the mortgage for the purchase money was made, would protect also, and for the same reason, advances made by the vendor, under an express agreement that he shall be secured therefor by a mortgage on the premises to be delivered simultaneously with the deed, towards improvements put on the property by the vendee, with a view to becoming the owner of the premises. Nor is there any reason, unless one can be found in the demands of the lien law, for giving to the claim of the mechanic or materialman in such a case, priority over such a mortgage. As against the estate of Pleasants, who was the owner of the premises during the time covered by the lien claim and when the building was commenced, no lien is claimed. Neither Tucker nor Pleasants was a party to the lien claim or the suit thereon. As against the estate of Pleasants, the lien would not lie. *Babbitt* v. *Condon*, 3 *Dutcher* 154 ; *The Associates of the Jersey Company* v. *Davison*, 5 *Dutcher* 415 ; *Coddington* v. *Dry Dock Co.*, 2 *Vroom* 477. Thurston had no legal estate in the premises. He had an equitable title, but he could only have acquired the legal title in pursuance of it, by complying with the terms of the agreement under and by virtue of which his equitable title arose. He must have paid or secured, according to the stipulations of that instrument, the purchase money and the advances for building, with all interest. If Graham had, by means of his lien, acquired the title which Thurston had, he must have taken it subject to the same conditions. Nor will the legal estate which Thurston obtained by the conveyance from Pleasants be held to have attached to the equitable one which he held under the agreement before the

conveyance, to the prejudice of the complainant's rights. The mortgage was delivered simultaneously with the deed of conveyance. The title did not vest in Thurston. Through him it passed to the complainant. He was seized for an instant only. He received and parted with the title at the same time, and was but the instrument of conveying it to the complainant. To such a merely transitory seizin no lien could attach. *National Bank of the Metropolis* v. *Sprague, supra; Griggs* v. *Smith,* 7 *Halsted* 22 ; *Chickering* v. *Lovejoy,* 13 *Mass.* 51 ; *Thaxter* v. *Williams,* 14 *Pick.* 49. Nor can it be claimed that Thurston was the " owner" of the premises by reason of the contract existing between him and Tucker to build the house. The agreement is not a consent within the meaning of the fourth section of the mechanics' lien law. If it were held to be such, it was not recorded, though it was acknowledged and filed. *Babbitt* v. *Condon, supra; Associates, &c.,* v. *Davison, supra.* Who caused it to be filed, or for what purpose, or with what design it was filed, does not appear. If it be held that this instrument is such a consent in writing as is contemplated by the fourth section, and that such consent need not be recorded, the objection still remains, that the consent given by this instrument is of such a character as not to authorize any mechanic or materialman to do work or furnish materials upon it; for the agreement stipulates that there shall be no conveyance of the title until all liens incurred by Thurston shall be discharged of record. It provides also, for securing the advances of money by a mortgage to be given simultaneously with the deed of conveyance. The mechanic or materialman who should give credit to Thurston by reason of this instrument, would do so with full knowledge of the rights reserved and stipulations made by Tucker for his own protection. It is also to be borne in mind that the owner of the fee is not a party to this lien claim. In *Moroney's Appeal,* 24 *Penn.* 372, there was a mortgage in the common form, given to secure the payment of a bond for $12,000, which bond was, in fact, given in consideration of a covenant

by the obligee to advance $12,000 for the purpose of building on the mortgaged land, the advances to be made in certain proportions, according to the progress of the buildings ; and it was held that it ranked as a lien for the amount loaned from the date of its record, and not from the date of the actual advances, and that it had priority over mechanics' liens entered subsequently to the mortgage, though before all the advances were made, although the mortgagor, who had contracted to apply the money to the payment of the builders, had in part failed to do so. The language of the court, in that case, is appropriate to the case of the lien claimant here : " If the owners of these liens trusted Montgomery (the builder) without examining the state of the records, the law provides no relief from the consequences of their negligence, and morality does not demand that it shall ; and even charity will not allow it, at the expense of more careful men. If they did examine the records, then they found the lien of Cadwallader (the mortgagee) standing good against Montgomery, and honesty forbids them to cut it out for their profit. If they found it, and still trusted Montgomery without inquiry, then they agreed to trust him, even with a lien against him of $12,000, and with no apparent means to pay them. If they made inquiries, then they learned that he would have $12,000 in his hands to pay for the improvements he was making, and they trusted him that he would appropriate it properly."

There is no equity in giving Graham's lien priority over the complainant's mortgage, whether as to advances for building, or for taxes and assessments ; nor is he, by the provisions of the mechanics' lien law, entitled to such priority.

There will be a decree accordingly.