## THE BANK OF HARLEM

*v.*

## THE CITY OF BAYONNE et al.

1. An assignment, for a valuable consideration, of a sum of money due, or to grow due, on the performance of an existing contract, will, on notice thereof being given to the debtor, operate as an equitable assignment of so much of the fund as is covered thereby, subject to all valid prior charges.

2. On notice of the assignment being given to the debtor, and the possible debt ripening into an enforceable money liability, equity vests the equitable title *pro tanto* of the fund in the assignee, of whom the debtor becomes the trustee or *quasi* trustee as to the amount assigned, subject to existing equities.

3. Acceptance by the debtor is not, in equity, necessary to the validity of the assignment. It takes effect from the acts of the assignor and assignee, and the debtor, so far as the right to the fund is concerned, is but the instrument through whom the transfer is to be actually made.

4. Payment, after notice of the assignment, to any person other than the assignee, will not relieve the debtor of his liability to the assignee.

5. A provision that a contract shall not be assigned or sublet will not invalidate an assignment of the money earned by the contractor under the contract, made by the member of the contracting firm to whom alone, by agreement of the contractors, the money is payable, notice thereof being given to the debtor.

6. Notice to the council of a municipal corporation, which is clothed with the exclusive control of the expenditure of the money of the city, of an assignment of money to be paid under a contract therewith, is sufficient to impound the same for the benefit of the assignee.

---

On the 20th of May, 1889, the mayor and council of the city of Bayonne, as parties of the first part, entered into a contract with Charles T. Munn and John Phelan, therein described to be "co-partners under the firm name of Munn & Phelan, contractors, party of the second part," by which the said Munn & Phelan undertook to build a sewer and appurtenances in said city, of the dimensions, in the manner, and under the conditions specified in the said contract, for the consideration of $11,050, and the sum of $6.50 per cubic yard for each cubic yard of rock excavated and returned by the engineer in charge.

The contract was executed, under the seal of the city, by the mayor, attested by the city clerk, and also by Charles T. Munn and John Phelan.

The specifications, which are made part of the contract, provide that—

"Wherever the word 'contractor' and the words 'party of the second part,' and the pronouns in the place thereof, are used in this contract, they are to be considered as referring to and meaning the party or parties (as the case may be) of the second part to this agreement."

And further—

"And the said party of the second part further agrees that he will give his personal attention constantly to the faithful performance of said work; that he will not assign nor sublet the same, but will keep the same under his control."

By an instrument in writing, under date of the 20th of May, 1889, it was agreed by and between Charles T. Munn and John Phelan that the said Munn thereby sold, assigned and transferred to said Phelan all the right, title and interest of him, the said Munn, in and to the Avenue C sewer contract at Bayonne, New Jersey, that day executed by and between said city of Bayonne on the one part and the said Munn & Phelan on the other part.

It further provided that said Phelan was to commence, prosecute and complete said contract at his own expense and as if said contract were originally awarded to him alone, and said Phelan thereby assigned, transferred and set over to said Munn a certain percentage of the contract price of said contract, and of the price for rock excavation mentioned in said contract, providing that—

"Said several sums assigned to said Munn, the said Munn shall have a right to receive only out of the last payment to be made on and for said contract; said Phelan, except as to such sums so assigned to said Munn, and said Phelan only, to have a right to receive from said city all moneys payable for and on said contract and to become payable thereon and therefor."

John Phelan borrowed from the Bank of Harlem on his note, dated June 7th, 1889, at two months, the sum of $2,000, and gave to the bank a paper, executed under his hand and seal, dated June 6th, by which he transferred and set over to the Bank of Harlem his interest in and right to the money due, or to grow due, to him to the extent of $2,000 under the contract, and also authorized and directed the said city of Bayonne to pay the said sum of $2,000 to the said Bank of Harlem out of the first moneys that should thereafter become due to him under said contract.

The first payment was ordered on the contract September 3d, 1889, on the certificate of the city surveyor for $2,000, as due at its date; a warrant for such payment was drawn to the order of Munn & Phelan, and by the mayor of said city, in the presence of Phelan, and with his assent and by his endorsement, paid to the president of the Bank of Harlem. Phelan, at that time, made such representations as to his financial difficulties, that the bank loaned him $1,500 on his note, dated August 10th,

1889, at fifty days, with the memorandum thereon "assignment of Bayonne contract as collateral," and Phelan gave another assignment as follows:

> "I, John Phelan, of the city of New York, do hereby transfer and set over to the Bank of Harlem of said city, my interest in and right to the money due and to grow due to me, to the extent of fifteen hundred ($1,500) dollars, under the contract for building a sewer in the city of Bayonne, New Jersey, made between said city and the firm of Munn & Phelan, and dated May 20th, 1889. I also authorize and direct the said city of Bayonne to pay the said sum of $1,500 to the said Bank of Harlem out of the first moneys that shall hereafter become due to me under said contract.
>
> "JOHN PHELAN [Seal]
>
> "Dated New York, September 6th, 1889.

This assignment was served on Mr. Hamilton, the city clerk, on September 6th, as appears by his endorsement thereon.

At a meeting of the city council, held September 17th, as appears by the minutes, Mr. W. C. Hamilton, city clerk, reported having had filed with him an order from John Phelan, of the firm of Munn & Phelan, to pay to the Bank of Harlem, of New York, the sum of $1,500 out of the first moneys that shall thereafter become due to him under the contract for building a sewer in the city of Bayonne, which was received, and clerk directed to return the same to the Bank of Harlem, with the explanation that the city cannot recognize any such order.

It was, in pursuance thereof, returned to complainant.

The bank obtained from Phelan the following:

> "To the Mayor, Treasurer and City Council of the City of Bayonne:
>
> "Please pay to the Bank of Harlem, of the city of New York, the sum of $1,500 out of the first moneys that shall hereafter become due and payable on the contract for building sewer in the city of Bayonne, New Jersey, made between said city and the firm of Munn & Phelan, from whom I hold assignment of said contract, and all moneys due or to become due thereunder with power of attorney to receive the same.
>
> "In lieu of such payment in cash, you are hereby directed to deliver to the said Bank of Harlem the next warrant drawn to the order of Munn & Phelan by the city council of Bayonne under the aforesaid contract, and I hereby authorize the said Bank of Harlem, or its attorneys, in my name and place and stead, to give full receipts and acquittances therefor.
>
> "Dated New York, September 6th, 1889.
>
> "(Signed)    MUNN & PHELAN.

Gibson & Whiting, the attorneys for the bank, addressed the following communication to the mayor and council of the city of Bayonne, and annexed it to the above order:

" *To the Mayor and Board of Council of the City of Bayonne:*

" We desire hereby to give you formal notice, that the assignment or order made by John Phelan, dated September 6th, 1889, whereby he authorized and directed the said city of Bayonne to pay the sum of fifteen hundred dollars to the Bank of Harlem from the first moneys that should thereafter become due under a contract made between said city and the firm of Munn & Phelan, dated May 20th, A. D. 1889, for building a sewer in said city, the original of which assignment or order was duly served upon you on said 6th day of September, 1889, still remains in full force and effect.

" You will please take notice also of the annexed order and power of attorney made by Munn & Phelan to the Bank of Harlem, dated September 6th, 1889, by which the mayor, treasurer and city council of the city of Bayonne are directed to pay the said sum of fifteen hundred dollars to the said bank out of the first moneys that shall thereafter become due and payable under the said contract, and are likewise directed, in lieu of such payment in cash, to deliver to the said bank the next warrant drawn to the order of Munn & Phelan by the said city of Bayonne under the aforesaid contract.

" Your attention is also called to the fact that both of the above-mentioned orders or assignments are dated the day prior to the assignment or contract made between said John Phelan and Frank James, and the power of attorney to the said Bank of Harlem to receive the said warrant was given by said Phelan to said bank before the one given by him to said James.

"And we hereby give you formal notice that the city of Bayonne is hereby notified not to deliver any money or warrant for money due or to become due on the above-mentioned sewer contract to any person other than said Bank of Harlem or its authorized agent, and the said city of Bayonne will be held strictly accountable by the said Bank of Harlem for its failure to recognize the rights of said bank under the above-mentioned orders and assignment.

" Dated New York, October 1st, 1889."

John J. Smith, a clerk in the employ of Gibson & Whiting, attended a meeting of the council of the city of Bayonne on the evening of the 1st of October, 1889. He testifies that he reached the city hall and inquired for the clerk, Mr. Hamilton, who was pointed out to him, and that he handed him a paper, being the notice and order, and during the course of the evening, when communications were reached, the clerk read this paper aloud to the board, and one member of the board called on the city attorney for his opinion. That the city attorney in response said:

"The city made the contract with Munn & Phelan, and one of the condi-
tions was that the contract was not assignable, and that the city will not recog-
nize any assignment. All orders for payment will go to Munn & Phelan, and
not to other parties named in the assignment, and advised the board to return
the notice from whence it came."

Smith says he left the notice there that night; That he made
a memorandum the next morning of what had taken place at the
meeting, and gave his testimony, after refreshing his memory by
reference to the memorandum.  The minutes of the council of
October 1st, 1889, simply states with reference to this, " commu-
nications  *  *  *  from John Phelan, contractor, relating to
sewer contract &c. ordered returned."

On the 15th of October, 1889, a report was presented to the
council by Emmett Smith, city surveyor, certifying that Munn
& Phelan, the contractors for building the sewer in Avenue C
and West Fifty-second street, had furnished material and per-
formed work under said contract to the amount, less percentage
reserved and former certificate, of $600, which report was re-
ceived and warrant ordered drawn for the same.

At a meeting of the council held, November 5th, 1889, report
was made by Emmett Smith, the city surveyor, that Munn &
Phelan, contractors for building sewer in Avenue C and West
Fifty-second street, had furnished material and performed work
under said contract to the amount, less percentage reserved and
former certificate, of $2,000, which report was received and a
warrant ordered drawn for its payment.

Warrants were drawn in pursuance of these proceedings for
$600 and $2,000, respectively, to the order of Munn & Phelan,
and were not delivered to the bank, but to some one else, and
were paid by the city on their endorsement " Munn & Phelan
by Frank James, attorney."

It appears that John Phelan, under his hand and seal, under
date of September 9th, 1889, gave to Frank James an assign-
ment of the contract, but it does not appear that notice of said
assignment was ever given to the city.

A power of attorney, dated July 17th, 1889, from John
Phelan, authorizing Frank James to receive from the city all

moneys due or to become due on the contract, except the final payment, was marked for identification, but was not offered in evidence, and was not shown to have been brought to the notice of the city.

*Mr. Edward A. Day*, for the complainant.

*Mr. Charles W. Fuller*, for the defendant, the city of Bayonne.

GREEN, V. C.

The city officials seem to have proceeded on the theory that acceptance on its part was necessary to the validity of a transfer of money payable by the city on a contract. The city clerk was directed by the council, with no little formality, to return to the complainants the assignments and notices which had been served, in one instance, " with the explanation that the city cannot recognize any such notice." The position assumed misconceives the nature of, if it does not entirely ignore, those transfers of particular funds, known as equitable assignments, recognized and enforced by a court of equity.

It is settled that an assignment for a valuable consideration of a sum of money due or to grow due on the performance of an existing contract, will, on notice thereof being given to the debtor, operate at once, or when the fund is created, as an equitable assignment of so much of the fund as is covered thereby, subject to all valid prior charges. *Superintendent &c.* v. *Heath,* 2 *McCart. 22; Shannon* v. *Mayor of Hoboken, 10 Stew. Eq. 123; affirmed on appeal, 10 Stew. Eq. 318; Kirtland* v. *Moore, 13 Stew. Eq. 106; Brokaw* v. *Brokaw, 14 Stew. Eq. 315; Lauer* v. *Dunn, 115 N. Y. 405; Story Eq. Jur. § 1040; 3 Pom. Eq. Jur. § 1280.* While, properly speaking, an assignment cannot be made of a subject which does not exist, such as a fund to become due on the future performance of a subsisting contract, yet equity, on the possible debt ripening into an enforceable specific money liability, treats the agreement as an assignment *pro tanto* of the fund, and, by force thereof, vests the equitable title to the money in the assignee. *Field* v. *Mayor, 6 N. Y. 179; S. C., 57 Am.*

*Dec. 435 and notes; Hall v. City of Buffalo, 1 Keyes 199';*
*Brill v. Tuttle, 81 N. Y. 454, 457; Brown v. Dunn, 21 Vr. 111,.*
*113; 2 Spenc. Eq. Jur. § 852; 3 Pom. Eq. Jur. §§ 1280,.*
*1283, n. 2.*

To impound the amount in the hands of the debtor, notice of
the assignment must be given to him, but no particular form of
notice is required; any writing or act which clearly indicates
that the assignor intends to make over the fund belonging to
him amounts in equity to an assignment of the fund. *Bower* v.
*The Hadden Blue Stone Co., 3 Stew. Eq. 171; S. C. on appeal,*
*sub nom. Lyon v. Bower, 3 Stew. Eq. 340; Shannon v. Mayor,*
*supra.* On notice being given to the debtor,. and the sums being
earned under the contract, the debtor becomes trustee or *quasi*
trustee for the assignee as to the amount assigned, subject to
existing equities and valid prior charges thereon. *Story Eq. Jur.*
§ *1044; 2 Spenc. Eq. Jur. § 857; Hall v. Buffalo, supra;*
*Darle v. Hall, 3 Russ. 1, 57; Meme v. Bell, 1 Hare 73, 84.*
From this it follows that neither payment to nor a release or dis-
charge by the assignor, after notice of the assignment, can affect
the rights of the assignee against the debtor. *Jones v. Farrell,.*
*1 DeG. & J. 208; Brill v. Tuttle, supra; Field v. Mayor,*
*supra; North Bergen v. Eager, 12 Vr. 184; 2 Pom. Eq. Jur.*
§ *704.*

It is evident from this statement of the incidents of an equitable.
assignment that acceptance by the debtor of the order or assign-
ment is not, in equity, necessary to its validity as a transfer *pro*
*tanto* of a fund in his hands. It takes effect from the acts of the
assignor and assignee, and the debtor, so far as the right to the
fund is concerned, is but the instrument through whom the trans-
fer is to be actually made. "The debtor's acceptance or promise
gives the assignee an action at law against him, not on the assign-
ment, but on the promise; in equity, it neither creates, increases
or diminishes his liability to the assignee. *3 Pom. Eq. Jur.* §
*1280* and *note 1.*

The answer of the city admits the making of the contract;.
that Phelan commenced the work under it, and certain provisions
of the contract; it puts in a denial of other allegations of the

bill, and of knowledge sufficient to form a belief as to the remainder. As originally filed, the answer sets up as a defence that the complainant, prior to the $1,500 loan, had loaned Phelan $2,000, and sought to make an arrangement with the city whereby the payment of the loan of $2,000 would be guaranteed to the complainant, which the city refused to do, and notified complainant, through its officials, that the city would not in any way recognize any transfer, assignment or order, which should be made by Phelan, or Munn & Phelan, for the payment of any moneys to grow due upon the contract. That complainant was notified of the first payment to Munn & Phelan being ordered, and advised to recoup itself from the moneys so ordered paid, and that the subsequent loan of $1,500 was made with full knowledge of all these facts and after payment had been made of the loan of $2,000.

This statement, contained in paragraph four of the answer, was, under Rule 224, struck out on motion. The grounds for granting such motion were, that the facts therein stated, if true, furnished no defence to the action for the reasons which are hereinbefore stated.

After the close of the evidence counsel for the city urged that the complainant was not entitled to a decree on two grounds— *first*, that no valid assignment had been made out; and, *second*, that notice to the city had not been proven.

The first objection went not to the form of the assignments, but to their execution. There were two, one in the name of "John Phelan," the other "Munn & Phelan," but each was signed by John Phelan personally. It was argued that the debt to the complainant was money borrowed by Phelan on his individual note, to secure which he could not use the partnership credit or property. In support of this position counsel cited *Lind. Part. (Text Book Series) 201, 203, note 1; Mecutchen v. Kennedy, 3 Dutch. 230; Farmers and Mechanics Bank v. Green, 1 Vr. 316; Craig v. Hulschizer, 5 Vr. 363*. If this case shows nothing which takes it out of the principle of those cases, the contention of defendants must prevail. In the cases cited, except the last, the non-acting partner sought relief from the act of the

·other. In this Munn, the passive partner, is a party, and makes no objection to anything done by his partner. Nor could he well do so. It appears that on the very day the contract was signed he assigned to Phelan all moneys arising from the contract except :a percentage, which he was to receive only out of the last payment, Phelan only to have a right to receive all other moneys payable for and on said contract. It appears by his testimony that Phelan was to do all the work and furnish all the money, and by Phelan's testimony that the original loan by complainants, which was the real basis of the one in question, was for money ·used on the work. There is no pretence· that the amount covered by the assignments was that from which Munn's percentage was to be paid. The money was therefore, as between Munn & Phelan, due to and belonging solely to Phelan, and which he alone ·had the right to receive from the city. As such, so far as the ·partnership was concerned, Phelan could control and dispose of it. The citation from Lindley was urged as an authority that Phelan had no right to sign the firm name to one of the assignments ; but such authority relates to the use of the firm name to negotiable instruments. In this case, he had given his own :assignment, but the contract was with Munn & Phelan. It might be that the city would not recognize his individual assignment, and would require the name of the firm. The money belonging to him, as against Munn, and the assignment being given to secure an advance of money to prosecute the work, there was no fraud in his using the name of his firm, if it would facilitate the collection of the money. *Boswell* v. *Green, 1 Dutch. 390,* ·396. The city had notice of this authority in the assignment itself, which recites that he holds an assignment of said contract and all moneys due, and to become due thereunder, with power of attorney to receive the same.

It is claimed that the assignments cannot be recognized because they violate an express provision of the contract. That pro·vision is—

"And the said party of the second part further agrees that he will give his personal attention constantly to the faithful performance' of said·work, and ·that he will not assign nor sublet the same, but will keep the same under his ·control."

This is simply a provision against subletting, inserted to secure· the performance of the contract; its violation might have authorized the city to take the work out of the hands of another person attempting to do it, but cannot control the disposition of money earned under the contract by the contractor, accepted by the city and certified as done under its terms. This line of defence is, open to the criticism that it is disingenuous, in view of the fact that it appears by the warrants for $600 and $2,000 that they were actually paid on endorsements, having the same authority as the assignments thus objected to.

Did the city have proper notice?

The charter of Bayonne is found in the laws of 1872. *P. L. of 1872 p. 686.* By section 17 it is provided that the treasurer shall pay out money only upon the warrant of the board of councilmen, signed by the mayor and countersigned by the city clerk, and no warrants on the city treasurer shall be authorized except in pursuance of an order of said board, passed at a stated meeting and entered on the minutes. In this case both of the assignments were given to the city clerk and by him presented to the council the last one was read to the council and discussed. The council was the body under the charter whose vote controlled the expenditure of all money, and it is difficult to determine what better service could have been made. In *Field* v. *The Mayor, supra,* and in *Hall* v. *The Mayor supra,* notice was served on the comptroller; in *Shannon* v. *Mayor, 10 Stew. Eq. 123,* service was on the city clerk. In this case, on the city clerk, who presented the assignments and notice to the council.

I am of opinion that the assignments given to the complainants were properly brought to the notice of the city, and that the same were valid, equitable assignments of $1,500 of the payments made thereafter; that the delivery of the warrants for· $600 and $2,000 to persons other than the complainant was in violation of its rights, and that it is entitled to recover the sum of $1,500, with interest on $600 from October 15th, 1889, and on $900 from November 5th, 1889, the dates, respectively, of the two payments.