WASMUTH-ENDICOTT COMPANY, a corporation, complainant,

*v.*

WASHINGTON TOWERS, INCORPORATED, a corporation, defendant.

[Decided December 18th, 1931.]

*Mr. Maurice S. Maurer,* for the exceptant Eastern Sash and Door Company.

*Mr. Herman J. Harris,* for the exceptant Herman Lippin.

*Mr. John J. Fallon, Jr.,* for the exceptant Nathan Strauss & Sons, Incorporated.

*Mr. Irving M. Goldberg,* for the exceptants Herman Lustig and Irving M. Goldberg, assignee of the G. & G. Lighting Fixture Company.

*Mr. Harry Green,* for the receiver David M. Litwin, *contra.*

BERRY, V. C.

The exceptions, four in number, are by five general creditors and are all to the same effect.

The first challenges the allowance of complainant's claim of $3,464.16 as a preferred claim.

The second, third and fourth so-called exceptions are not exceptions at all, but are objections to allowances asked for by the receiver and his counsel as compensation for their services.

They will be considered in their order.

All exceptants rely upon the brief of counsel for the exceptant Eastern Sash and Door Company, who also argued the matter orally.

I.

The unfamiliarity of exceptants' counsel with the various transactions of the receiver and his counsel and the facts furnishing the basis for the allowance of complainant's claim as a preferred claim is equally as apparent from the argument contained in his brief as it was from his oral argument on the return of the order to show cause and which prompted comment by the court at that time.

The complainant furnished certain kitchen equipment for an apartment house under construction by the defendant company upon which the Eleventh Ward Building and Loan Association had taken an advance-money mortgage of $260,000. Before this equipment was installed the complainant was requested to postpone its claim as conditional vendor to the building and loan association mortgage and in consideration for such postponement the defendant assigned to the complainant the proceeds of the mortgage in the hands of the mortgagee to the extent of $5,829, representing the purchase price of such equipment and of which

sum the building and loan association paid $2,500 on or about April 5th, 1929. Thereupon the complainant executed the postponement agreement and thereafter furnished and installed the balance of the kitchen equipment. At the time of said assignment the building and loan association had in its hands $70,000 of the amount to be advanced on the mortgage. Before the full amount was advanced the defendant company was declared insolvent and Mr. Litwin appointed as receiver. Thereafter foreclosure proceedings were instituted by Commerce Mortgage Company, a second mortgagee, the insolvency receiver filed an answer and counter-claim therein and made the Eleventh Ward Building and Loan Association a defendant to such counter-claim. In that proceeding (*Commerce Mortgage Co.* v. *Washington Towers, Inc., et al., Docket 76 p. 134*), as a result of the counter-claim, the building and loan association was directed to pay to the receiver the sum of $13,382.70, representing the unadvanced portion of said mortgage loan, and the final decree, dated May 13th, 1930, provided "that the Eleventh Ward Building and Loan Association of Newark, shall forthwith pay to the * * * receiver of Washington Towers, Incorporated, the sum of $13,382.70 and the liens claimed by the defendants Wasmuth-Endicott Company, The Newark Dumbwaiter Company, G. & G. Lighting Fixture Company, and G. M. Ketcham Manufacturing Corporation be, and the same are hereby transferred from the lands and building involved in this foreclosure to said moneys, the same to remain subject to the same liens and equities of said parties as was the property at the time of the filing of the foreclosure bill, and counter-claim herein, to be disposed of as the court shall direct." In the argument of exceptants' counsel it is assumed that complainant's claim to preference rests upon the quoted provision of the final decree in that foreclosure suit, but that is not so. It has a firmer foundation, namely, its assignment, and irrespective of the provisions of the decree, the complainant is entitled to be first paid out of the funds which thus came into the hands of the receiver. After the execution of that assignment, and notice thereof to the building and

loan association, that association held the mortgage moneys, to the extent of the assignment, in trust for the assignee, and when its moneys were paid over to the receiver in this proceeding they remained charged with the trust thereby created. *Structural Gypsum Corp.* v. *National Commercial Title and Mortgage Guarantee Co.* (*Court of Errors and Appeals*), *107 N. J. Eq. 32.* The first exception is overruled.

The exceptant Lippin also included in his first exception, *arguendo,* that if complainant's claim is entitled to preference the complainant had no standing to file this bill, suggesting, inferentially, that the entire proceedings should be dismissed. In the event of such action it is not suggested what disposition the court should make of the assets now in the receiver's hands; but it is rather late for this creditor to challenge the right of the complainant to file the bill, when, as a result thereof, the receiver has substantial funds in his hands for distribution amongst the creditors, now available only because of the filing of the bill of complaint and the ferret-like activities of receiver and counsel; and further, this exceptant has filed his claim with the receiver and seeks to participate in the distribution about to be made. He cannot both participate in the benefits of the receivership and challenge its legality.

II.

It is quite apparent that the second so-called exception must also be overruled. The argument in support of it is based upon a false premise.

Exceptants claim that the receiver is seeking an allowance of $2,500 out of the avails of this receivership for services rendered in another and prior action in which he was appointed rent receiver. That is not correct, although the facts are somewhat confusing. Mr. Litwin, the receiver in this cause, was also appointed as rent receiver in the foreclosure action of *Commerce Mortgage Co.* v. *Washington Towers, Inc., et al., Docket 76 p. 134,* which was instituted after his appointment as insolvency receiver. In that suit, as already stated, he, as insolvency receiver, interposed an answer and counter-claim which resulted in the payment to him of

the sum of $13,382.70. This was a compromise amount, approved by the court, and was arrived at through an understanding that the receiver, as rent receiver, should be paid for his services out of the funds so paid to him instead of out of rents which he collected. This arrangement was approved by Vice-Chancellor Backes before whom that cause was heard and who advised the final decree. Therefore, when that fund came into this receiver's hands it was charged with the liability for payment for his services as rent receiver. It would, perhaps, have been more appropriate and less confusing had the rent receiver's fees been fixed and determined at that time, but it was not done. Had it been done, the insolvency receiver would have received only what remained of the $13,382.70 after deducting the rent receiver's fees and the insolvency receiver would have charged himself in his account with the net, instead of the gross, amount so received. But this is a mere matter of mechanics and the ultimate result, so far as the creditors are concerned, is the same in either case. There is no valid reason, therefore, why the fees of the receiver and his counsel for their services in the rent receivership should not be taken into consideration now. The two receivership proceedings were so involved and intertwined that it is almost impossible to separate the services performed in one from those performed in the other, and, as there is no diversity of creditors' interests as between the two receiverships, they will undoubtedly benefit by having both considered as one in so far as the fixing of compensation for the receiver and his counsel is concerned.

### III.

The third exception, so-called, is also overruled.

Exceptants claim that "the receiver in other and collateral causes was allowed fees amounting to $500 for services scheduled in his account." Again the argument is based upon an entirely false premise. The $500 allowance referred to was to counsel for the receiver, and not to the receiver, in a proceeding instituted by the receiver and which finally resulted in the payment to him of the sum of $16,000 in settlement

of a decree obtained in that suit. The $500 allowance was a part of the complainant's costs allowed by the final decree. Upon the settlement of that decree counsel for the receiver would have been justified in deducting the amount of his costs, including the $500 allowance, from the $16,000 which he received, but he did not do so. The full sum of $16,000 was turned over to the receiver and appears as a charge in his account. When so received by him it was, of course, subject to the claim of his counsel for costs. The amount now asked for by counsel for the receiver is inclusive of the amount due him for costs and counsel fees in the proceeding referred to, and exceptants are in error in claiming that the receiver and his counsel are seeking double compensation for their services.

## IV.

This so-called exception is a general objection to the allowances asked for by receiver and counsel.

As compensation for his services extending over a period of about two years the receiver asks $7,500 and his counsel, for services extending over a like period, asks a like amount. There is no rule of thumb by which compensation for services of a receiver and his counsel may be measured. Each case must be controlled by its own circumstances. Among the factors to be considered in fixing such compensation are the amount of cash and other assets coming into the receiver's hands; the time occupied by the receiver and his counsel in the performance of their respective duties and their ability and efficiency as officers of the court reflected in the results obtained; the difficulties of conserving and administering the insolvent estate and the care and fidelity with which those difficulties have been met and surmounted. The fixing of such compensation lies largely in the court's discretion, which should be judiciously exercised, and not abused, but bearing in mind that officers of the court occupying positions of trust and confidence are entitled to just compensation, and with due regard to the claims of creditors and others interested in the assets of the insolvent estate. In my judgment, the judge under whose immediate supervision

the services for which compensation is to be made were performed, is best qualified to appraise their value, and in this respect the ancient slander that "equity is as long as the chancellor's foot" may be true. I use the word "compensation" instead of "fees" or "allowances" as that is the term used in section 85 of the General Corporation act and because I believe these latter terms are too frequently, in insolvency proceedings, considered as synonymous with "gratuities" both by litigants and the public; but "fees" are allowed not as "gratuities" but as compensation for services rendered. Just compensation cannot be awarded upon a fixed percentage basis of assets administered. Such a rule would necessarily result in both over-payment and under-payment at times and the instances of "just compensation" would be rare indeed. Ample compensation should always be allowed where assets in the custody of the court are sufficient, otherwise difficulty would be experienced in finding capable officers to act in such positions of trust and responsibility. Such is the rule, I take it, to be deduced from the authorities, among which may be cited *Woolsey* v. *The Cummings Car Works* (*1881*), *33 N. J. Eq. 432; In re Union Bank of Jersey City* (*1883*), *37 N. J. Eq. 420; Silvers* v. *Merchants,' &c., Building Association* (*1903*), *56 Atl. Rep. 294; Lembeck* v. *Jarvis Terminal Coal Storage Co.* (*1904*), *68 N. J. Eq. 352; In re Hahn* (*1915*), *84 N. J. Eq. 523; Bailey* v. *Glormine* (*1917*), *88 N. J. Eq. 254; Attorney-General, ex rel. Bliss* v. *Linden Cemetery Co.* (*1919*), *90 N. J. Eq. 404; Hitchcock* v. *American Pipe and Construction Co.* (*Court of Errors and Appeals, 1919*), *90 N. J. Eq. 576; Fidelity Trust Co.* v. *J. H. Halsey & Smith, Ltd.* (*Court of Errors and Appeals, 1921*), *93 N. J. Eq. 161; Bennett* v. *Freehold Motor Co.* (*1921*), *115 Atl. Rep. 745; Unger* v. *Newlin Haines Co.,* (*1923*), *95 N. J. Eq. 16; Seidler* v. *Branford Restaurant, Inc.* (*1924*), *97 N. J. Eq. 153; Bock* v. *Columbia Brewing Co.* (*1926*), *99 N. J. Eq. 617; Landsman* v. *Globe Art Manufacturing Co.* (*1928*), *102 N. J. Eq. 464; In re New Jersey Refrigerating Co.* (*1928*), *103 N. J. Eq. 5; Franklin Lumber Co.* v. *Harold Anderson, Inc.* (*Court of Errors and Appeals, 1929*),

*105 N. J. Eq. 542; Eisler* v. *Interstate Title Examiners, Inc.* (*Court of Errors and Appeals, 1930*), *106 N. J. Eq. 88; Glaser* v. *Achtel-Stetter's Restaurant, Inc.* (*Court of Errors and Appeals, 1930*), *106 N. J. Eq. 150; In re New Jersey Refrigerating Co.* (*1930*), *106 N. J. Eq. 526; Albert & Kernahan, Inc.,* v. *Franklin Arms, Inc.* (*Court of Errors and Appeals, 1930*), *107 N. J. Eq. 468.* Instances of insolvency receiverships where assets permit of no compensation or totally inadequate reward are not infrequent. Knowledge of the officers of this court that when circumstances warrant it the court would be more inclined to be liberal than penurious, prompts willingness on the part of such officers to serve with fidelity when no compensation is in sight. If these facts were borne in mind by litigants and counsel, less criticism of the courts respecting such allowances would be heard, and intemperate argument by ill-informed counsel, such as marked the oral argument on the return of this order to show cause, and which was well-nigh contemptuous, would be impossible.

The total amount of cash coming into the receiver's hands in this proceeding was $30,185.43, made up of the following items:

1. Settlement of claims against Eleventh Ward Building and Loan Association, $13,382.70.

2. Sale of property and miscellaneous receipts, $802.73.

3. Settlement of claim against Commerce Mortgage Company et al., $16,000.

The marshalling of these assets required eleven separate and distinct court proceedings, in which over eight hundred pages of testimony were taken. In these proceedings and the administration of the insolvent estate the receiver disbursed $2,069.33 as to which disbursements no objection has been made. He has now cash in hand amounting to $28,116.10. But as the services of this receiver and his counsel in the rent receivership must also be taken into consideration in fixing compensation now, the amount of moneys coming into his hands as rent receiver must also be considered. As such he collected the sum of $15,155.96. This sum, added to the

$30,185.43, brings the total cash receipts in the two receiverships to $45,341.39; but there is also another item to be considered. As the result of this receiver's action in the foreclosure suit, the Eleventh Ward Building and Loan Association paid out of the mortgage funds in its hands the sum of $5,991.45 to a preferred lien claimant and upon such payment the claim of the preferred lien claimant filed with the receiver was withdrawn. This sum should be considered as passing through the receiver's hands, as thereby preferred claims otherwise chargeable against funds in his hands were proportionately reduced. Considering this item, the total receipts of the receiver in the two receiverships amount to $51,332.84 and it is this sum which should be considered in fixing compensation of receiver and his counsel. Some idea of the amount of effort and labor expended by the receiver and his counsel in this matter may be gained by an examination of the statement of services attached to the receiver's report. This is so voluminous that any extended reference thereto is unnecessary.

The ability and efficiency of receiver and his counsel as reflected in the results obtained by them could not, in my judgment, have been excelled, and I am of the opinion that without their unusual services there would have been nothing for distribution amongst the creditors now.

An allowance of $5,000 each to the receiver and his counsel will be made in this cause. This allowance is not based upon a percentage of the assets marshalled by the receiver but is what I consider fair compensation under all the circumstances. I have not overlooked the fact that in *Conover* v. *West Jersey Mortgage Co., 96 N. J. Eq. 441,* the chancellor made some distinction between allowances to the receiver for administrative work and compensation for legal services performed in association with his counsel, making an award for the latter services entirely to counsel and suggesting that an equitable division of such award be made between the receiver and his counsel. Here I think the circumstances are such as to justify equal awards to both receiver and his counsel and I have not, therefore, felt called upon to apply the rule laid down by the chancellor in the case cited.