103 N.J. Super. 227 (1968)
247 A.2d 33
JOHN MAYO, PLAINTIFF,
v.
CITY NATIONAL BANK AND TRUST COMPANY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 17, 1968.
*228 Messrs. Losche and Losche, attorneys for plaintiff (Mr. Kent A. Losche, appearing).
Messrs. Raff, Sherman and Scheider, attorneys for defendant (Mr. David R. Rudd, appearing).
LORA, J.S.C.
This is an action to recover from defendant City National Bank and Trust Company the sum of $5,000 assigned by Fairleigh Arms, Inc. to plaintiff John Mayo, which assignment the defendant did not honor.
The facts in this matter are largely undisputed. Defendant was the mortgagee of a construction loan mortgage in the principal amount of $750,000. The Fairleigh Arms, Inc. mortgage was dated May 11, 1966 and was duly recorded on May 13, 1966. It is stipulated and agreed that the sum of $607,500 had been advanced as of August 22, 1966, on which date Fairleigh Arms, Inc. assigned to plaintiff *229 the sum of $5,000 out of the future fifth mortgage advance. This assignment, consideration for which was $5,000 actually advanced for payroll use, was duly executed but unrecorded.
By instrument dated September 7, 1966 and duly recorded on September 8, 1966, Fairleigh Arms, Inc. gave to Cooper-Horowitz, Inc., a New York corporation, a mortgage in the principal amount of $50,000, which mortgage encumbered the same premises as defendant's mortgage. Defendant had actual notice of the Cooper-Horowitz mortgage by virtue of a letter, dated September 9, 1966, sent by the latter's attorneys to defendant.
Similarly, by letter dated September 21, 1966 Dominick Fondo, Esq., forwarded to defendant the original of plaintiff's assignment. Although defendant initially contended that it did not receive notice at this time, Fondo testified as to the date when the letter was sent and produced the return receipt indicating receipt of the letter by defendant. Additionally, it was stipulated at the trial that the Fondo letter was found in the bank's files. Accordingly, the court finds that the defendant had actual notice of the Mayo assignment on September 22, 1966, and hence long before the disbursements were made in connection with the fifth advance which took place on November 14, 1966.
On September 16, 1966 there was duly recorded a mechanic's notice of intention covering the subject premises, filed by P. Germinario and Sons, Inc., a plastering contractor. Neither Germinario nor Cooper-Horowitz had notice of the assignment to plaintiff.
The closing statement for the fifth advance and the testimony of William B. Shedd, Esq., who represented defendant at the closing, reveal the following disbursements:
(1) $10,000, was paid to the bank for two interim notes, dated August 19 and September 16, 1966, for advances to the mortgagor Fairleigh Arms, Inc. to meet payrolls;
(2) $10,058.74 was taken out by the bank for interest due on past advances;
*230 (3) $45,000 was paid to P. Germinario and Sons, Inc.;
(4) $5,575 was paid to Cooper-Horowitz, Inc.;
(5) $400 was paid to the bank's attorney for legal expenses;
(6) $25 was paid by way of refund to Fairleigh Arms, Inc. on account of $58.74 which had been advanced by Fairleigh. No checks issued to Fairleigh Arms, Inc. and no payment was made to plaintiff. According to Shedd's testimony, representatives of Germinario and Cooper-Horowitz were present and each insisted upon being paid in full. The court finds that at that time Germinario had done some $100,000 worth of work on the building. After prolonged discussions, however, Germinario and Cooper-Horowitz compromised the payments on account of their claims out of said fifth advance in accordance with the amounts stated above. Cooper-Horowitz executed on that date a postponement of its mortgage to the bank's mortgage and Germinario subordinated its claim. No further payments have been made, Fairleigh having gotten into financial difficulties.
The generic issue before the court, then, is whether defendant bank is liable to the plaintiff for failing to honor plaintiff's assignment. Specifically, the issue is whether the bank was justified in disbursing moneys in the manner in which it did.
Mayo contends that by virtue of his written assignment, which antedated all other instruments save the defendant's mortgage, he was entitled to share in the disbursement of the fifth construction advance, and after such notice the bank made payments to Germinario and Cooper-Horowitz at its peril. Palmer v. Palmer, 91 A. 281, 112 Me. 149 (Me. Sup. Jud. Ct. 1914); Bank of Harlem v. City of Bayonne, 48 N.J. Eq. 246, 252 (Ch. 1891); Todd v. Meding, 56 N.J. Eq. 83 (Ch. 1897); Russell v. Fred G. Pohl Co., 7 N.J. 32, 40 (1951). Plaintiff's position rests upon what appears to be the prevailing, although by no means unanimous, American rule, that as between successive assignments of the same right, the first in time, rather than the first to give notice, *231 prevails. See 4 Corbin, Contracts, § 902. The court conceives, additionally that having received notice of this equitable assignment, the bank might be considered to have held the $5,000 in trust for plaintiff. See Structural Gypsum Corp. v. National, etc., Co., 107 N.J. Eq. 32, 40-41 (E. & A. 1930), and Wasmuth-Endicott Co. v. Washington Towers, Inc., 110 N.J. Eq. 1 (Ch. 1931).
Were this merely a suit between successive assignees, or as in Palmer, supra, one which involved only assignor's creditor's as against the assignee, plaintiff's position might be perfectly valid, although the present status of New Jersey law in this regard appears, at least at first blush, to be unsettled. See Jenkinson v. New York Finance Co., 79 N.J. Eq. 247 (Ch. 1911); Moorestown Trust Co. v. Buzby, 109 N.J. Eq. 409 (Ch. 1931); In re Rosen, 66 F. Supp. 174 (D.C.N.J. 1946), affirmed 157 F.2d 997 (3 Cir. 1946).
The difficulty, however, of the issue before the court and, correlatively, with plaintiff's position, is that defendant bank, far from being a disinterested stakeholder, was itself a lienholder and creditor of the assignor with a clear and justifiable interest in the preservation of its own priority. A just disposition of the present matter must therefore take into account the bank's status as an advance money mortgagee, for it is obvious that the bank had a fundamental right to protect its own interest. Thus, the court's initial inquiry must be whether the bank, in terms of its mortgagee status, was justified in disbursing the fifth advance in the manner previously described.
There is no dispute that the bank had the right to pay the legal expenses of its attorney, nor is there any dispute concerning the $10,058.74 interest payment. Similarly, it was conceded by plaintiff's attorney at trial that the repayment by the bank to itself of $10,000 for the two interim notes was within the bank's right of set-off, besides which the mortgage allowed the bank to make advances at any time. The items in dispute, then, are the $45,000 paid to Germinario and the $5,575 paid to Cooper-Horowitz.
*232 Plaintiff contends that defendant had no need to make the payments either to Germinario or Cooper-Horowitz in order to preserve the priority of its mortgage, and points to N.J.S. 2A:44-88 which provides, in relevant part:
"The priority given by Section 2A:44-87 of this title shall exist when, at the time of the recording or registration of the mortgage:

* * * * * * * *
b. There is upon the affected land no building nor any excavation, footing or foundation construction, evidencing an intention to erect a building thereon; * * *."
Thus, the argument runs, the priority of defendant's mortgage was assured by this statutory provision. There is, however, nothing in the record to show that the statutory requisites above-described were met. Further, the statutory provision relied upon by plaintiff, assuming the requirements were met, would only have efficacy as between Germinario, the mechanic's lien claimant, and defendant mortgagee; it would not resolve the priority issue as between defendant and Cooper-Horowitz. See e.g., First National State Bank of New Jersey v. Carlyle House, Inc., 102 N.J. Super. 300 (Ch. Div. 1968).
In regard to the Cooper-Horowitz mortgage, plaintiff contends that it was expressly subordinated to the entire $750,000 mortgage held by defendant by virtue of the following clause:
"Subject to a certain mortgage from Fairleigh Arms, Inc. to The City National Bank & Trust Company of Hackensack dated May 11, 1966 recorded May 13, 1966 in Book 4413 of mortgages at page 249 in the amount of $750,000.00 of which $607,500.00 has been advanced."
As is apparent, this provision is not a model of clarity, nor are the doubts raised therein resolved by the following clause also contained in the Cooper-Horowitz mortgage:
"It is a condition of this mortgage that the mortgagor, its successors and assigns pay to the mortgagee, its successor and assigns, the future advances made by The City National Bank & Trust *233 Company of Hackensack pursuant to the aforementioned mortgage unless the debt secured by this mortgage and interest thereon is fully paid."
The ambiguity apparent in these provisions is underlined by the letter dated September 9 sent by Cooper-Horowitz's attorneys to defendant which provided, in relevant part, as follows:
"This is to notify you of the recorded mortgage and the provisions contained therein so that you will not make any advances to Fairleigh Arms, Inc. unless proper releases and subordinations are obtained from Cooper-Horowitz, Inc."
Thus, there is considerable doubt cast upon plaintiff's contention that the Cooper-Horowitz mortgage was clearly subordinated to that of defendant and, correlatively, there was just cause for defendant's attorney to be concerned with the priority of his client's mortgage.
Plaintiff further contends that defendant's mortgage, although an advance money mortgage, was assured of its priority because the payments thereunder were obligatory, not optional. Accordingly, plaintiff maintains the intervening lienors, Cooper-Horowitz and Germinario, could not affect the bank's mortgage. This issue, too, is not free from doubt. There was no construction loan agreement between Fairleigh and the bank, but only papers entitled "Mortgage Commitment and Closing Instruction Sheet", dated January 24, 1966 and May 10, 1966, respectively, the first of which indicated the amount of the commitment to be $600,000 and the terms "Construction Mortgage - Twelve Months - Interest Payable Monthly," to which was affixed the permanent "Take Out" letter of Manhattan Savings Bank dated December 14, 1965. The May 10, 1966 sheet set forth the amount of the commitment to be $750,000 and the terms "Construction Mortgage - Seven Months - Interest Payable Monthly". Both sheets contained a provision stating: "Subject to receipt of current financial statements and credit reports *234 satisfactory to the bank on Fairleigh Arms and the guarantors." Neither of these documents sets forth a schedule of payments but rather seem to envision disbursements at various stages of construction conditioned upon inspection of the premises.
The bank's construction mortgage in the principal sum of $750,000 is on a printed form designated "Construction Mortgage" and refers to the note or notes given by the mortgagor to the mortgagee, as evidenced by "loans made or to be made up to the amount set forth above"; it also provides that "parts or whole of any installment may be advanced before they come due if the lender believes it advisable so to do." Provision is also made for procedures on mechanics' liens in paragraphs two and three. In addition, the construction mortgage is replete with references to conditions which had to be met by the mortgagor to entitle it to disbursements. In light of these clauses, or at very least in light of the ambiguity of the documents themselves, it is difficult to say that defendant was obliged to make advances under the mortgage.
Nor is the status of the law governing the priority of advance money mortgages free from doubt. See 36 Am. Jur., Mortgages, § 234; 3 Glenn, Mortgages, § 402; 4 Pomeroy, Equity Jurisprudence (3d ed.), §§ 1198 and 1199; Griffin v. New Jersey Oil Co., 11 N.J. Eq. 49, 54 (Ch. 1855); Ward v. Cooke, 17 N.J. Eq. 93, 100 (Ch. 1864); MacIntosh v. Thurston, 25 N.J. Eq. 242 (Ch. 1874); Platt v. Griffith, 27 N.J. Eq. 207, 208 (Ch. 1876); Heintze v. Bentley, 34 N.J. Eq. 562, 566 (E. & A. 1881); Central Trust Co. v. Continental Iron Works, 51 N.J. Eq. 605 (E. & A. 1893); Micele v. Falduti, 101 N.J. Eq. 103, 104 (Ch. 1927); Porch v. Agnew Co., 70 N.J. Eq. 328, 341 (Ch. 1905); Weinstein v. Anderson, 102 N.J. Eq. 8 (Ch. 1927). It is illustrative of the practitioner's quandary that one of the treatise writers in the field ends his discussion of the rules governing advance money mortgages with the following caveat:
*235 "From the terms and conditions of advance money mortgages, and the statutory regulations already mentioned, the advisability should be clear, of continuing the title search to date and disposing of any new liens before each further advance is made." (13 N.J. Practice, Lieberman, Abstracts and Titles) (3d ed.), § 1008, p. 616.
Thus, factually and legally, there is serious doubt raised as to each of plaintiff's claims that the priority of defendant's mortgage could not have been challenged by either Germinario or Cooper-Horowitz. Again, it must be borne in mind that defendant in this suit is not the assignor, but the obligor. And it must be reiterated that the obligor, defendant herein, was not a mere stakeholder but rather a secured creditor of the assignor with a clear right to preserve its security and the priority of its lien.
"A mortgagee is entitled to have the security of the debt preserved against loss or diminution in value by reason of obligations owed by the mortgagor upon prior encumbrances. In this connection, it is settled beyond reasonable question that a mortgagee may protect his interest in the mortgaged property by paying off prior liens and encumbrances thereon, thereby substituting himself to the interest so discharged, under the general doctrine of subrogation. It has also been so held that where the mortgagee discharges such obligations, he may tack them to the mortgage debt. * * *"
(36 Am. Jur., Mortgages, p. 317).
The court is not dealing with a dispute between successive assignees of the same over an interpleaded fund. Even there, as previously noted, there is an apparent division of authority in New Jersey. The issue, as the court sees it, is not precisely who was entitled to the fund, the issue which would squarely be presented in an interpleader suit, but rather whether defendant violated a duty to plaintiff by disbursing the fifth advance in the manner it did. It was defendant's unenviable task to determine, at the time of the fifth advance, which of the competing claims were to be honored. Nor can this quandary be retrospectively mitigated by the contention raised ex post facto that if there were doubt, the entire advance should have been interpleaded. The practical necessity *236 of the situation, as testified to by Shedd, demanded that the contractor be paid so that construction could continue. Again it must be borne in mind that the defendant was not a mere stakeholder. Defendant, a secured creditor, should not be required to hazard the deterioration or the impairment of its security in order to resolve a side transaction between its mortgagor and the plaintiff. Cf. Cambridge Acceptance Corporation v. Hockstein, 102 N.J. Super. 435 (App. Div. 1968). In choosing to disburse funds to the two lienholders, defendant was following a prudent course of action. See First National State Bank of New Jersey v. Carlyle House, Inc., supra.
As was stated in Burke v. Hoffman, 28 N.J. 467 (1958), a case which involved a dispute between an equitable assignee and a lienholder:
"Where there are equal equities, the first in order of time shall prevail; and where there is equal equity, the law must prevail. The first of these equitable maxims means that as between persons having only equitable interests, if their interests are in all other respects equal, `priority in time gives the better equity, * * *.' Pomeroy's Equity Jurisprudence (5th Ed.), § 678. But the principle itself is not absolute; it prevails only where `the successive equitable interests are equal; indeed, the equity resulting merely from priority in time has been said to be the feeblest of any, and to be resorted to only when there is no other feature or incident of superiority,' the `superior equity' that will disturb the order of time. Ibid., § 707; also § 714.
A mortgage debt, although a chose in action, is yet, where the subject of the security is land, `an interest in land,' and priorities are governed by the rules applicable to interests in land, and not by the rules which govern interests in personalty. Pomeroy, Ibid., § 697. See also Sec. 712. And Midland's claim constituted a lien under the Mechanic's Lien Law. N.J.S. 2A:44-64 et seq. In equity, Midland's lien is deemed to have been transferred to the fund." (at pp. 474-475)
Plaintiff's sole claim herein is based on the equitable principle of "first in time, first in right." Defendant's rejection of that claim in favor of two other "interests in land" was in accord with the principles set forth in Burke.
*237 Then, too, the bank in making the disbursements aforesaid was seeking to guarantee its priority, as provided for in N.J.S. 2A:44-89.
Thus the court concludes that defendant acted reasonably, prudently and correctly in disbursing the fifth advance, and that it violated no duty to plaintiff. Accordingly, judgment will be granted in favor of defendant and against plaintiff dismissing the complaint.