## BANK *v.* SHERMAN.

### HICKLING *v.* SHERMAN.

On the 23d of February, 1875, certain creditors filed their petition in the District Court of the United States, praying that A. should be declared a bankrupt.   On the 9th of March he appeared, and leave was given them to amend their petition, by adding new causes of bankruptcy or otherwise.   On the 16th of April, he filed his answer, denying that the aggregate of the claims of the petitioners amounted to one-third of the debts provable against him.   Time was thereupon allowed for other creditors to unite with the petitioners, and the previous leave to amend the petition was continued.   On the 22d of that month one B. was permitted to unite with the petitioning creditors, and their petition was amended by alleging that A. within six months before the petition was filed committed, by the non-payment of his commercial paper, an act of bankruptcy.   The amount of A's debts then represented, was sufficient and upon the alleged act of bankruptcy set forth in the amended petition A was duly declared a bankrupt.   On the 12th of July, 1875, an assignment was made to C. as assignee which included all the property and effects of every kind in which A. "was interested or entitled to have" on the 23d of February, 1875.   C. filed, July 7, 1877, his bill to reach certain securities which had been transferred by A. on or about March 20, 1875.   *Held,* 1. That the continuity of the proceedings in bankruptcy was unbroken and that the assignment was operative, according to its terms, although the act upon which the adjudication was had was first alleged in said amendment to the petition. 2. That C.'s suit was not barred by the Statute of Limitations.

APPEALS from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Julius Rosenthal* and *Mr. A. M. Pence*, for bank.
*Mr. Albion Cate* for Hickling.
*Mr. J. S. Polk* and *Mr. L. H. Bisbee* for Sherman.

MR. JUSTICE SWAYNE delivered the opinion of the Court.

These are suits in equity. Our attention will first be given to the first-named case. The bill was filed by the appellee, Hoyt Sherman, as assignee in bankruptcy of Benjamin F. Allen, to reach certain securities therein described, which were transferred to the appellants by the bankrupt to secure the payment of two promissory notes of T. A. Andrews & Co., a firm consisting of T. A. Andrews and the bankrupt. One of the notes was for $15,000, and was held by the International Bank. The other was for $5,000, and was held by the appellant Hickling. On the 23d of February, 1875, a creditor's petition was filed in the District Court praying that Allen should be declared a bankrupt. On the 9th of March Allen appeared before the district judge. The hearing was postponed until the 16th of that month. Allen was given until that time to answer, and leave was given to the creditors to amend their petition, by adding new causes of bankruptcy or otherwise. Nothing further material was done in the case until the 16th of April following, when Allen filed his answer denying that the aggregate of the claims of the petitioning creditors amounted to one-third of the debts provable against him. Ten days was thereupon allowed for other creditors to unite with the petitioners, and the leave before given to amend the petition was continued. On the 22d of April following, Receiver Burley was permitted to unite with the petitioning creditors by signing the petition, which he did, and the petitioning creditors, including Burley, thereupon amended their petition. The amount of the debts of the bankrupt then represented was sufficient. The amendment set an act of bankruptcy by Allen in not paying his commercial paper within six months next preceding the time of filing the petition. An order of adjudication was duly entered, and on the 12th of July, 1875, an assignment was made to Hoyt Sher-

man, as assignee. The assignment included all the property and effects of every kind in which Allen, the bankrupt, " was interested or entitled to have on the twenty-third day of February, A.D. 1875."

The continuity of the proceeding from the outset was unbroken. The original petition was amended by inserting an act of bankruptcy which occurred before the petition was filed, as before stated, but the original petition was in no wise either dismissed or abandoned. There is no pretence for alleging either.

The assignment related back to the commencement of the proceeding, which was by filing the petition on the 23d of February, 1875, and the title of the assignee to all the property and effects of the bankrupt became vested as of that date. Rev. Stat. 980, sect. 5,044.

This bill was filed on the 7th of July, 1877. It was amended twice, but the amendments were chiefly verbal. Their effect was only to give greater precision to the charges already made. The framework of the bill remained the same. No new cause of action was introduced. The changes were not such as could have any effect with respect to the statutory limitation as to suits by or against assignees in bankruptcy. The limitation in such a case is two years. Rev. Stat. sect. 5,057. The time begins to run when the assignee is appointed. Bump on Bankruptcy, 558. The appellee having been appointed assignee on the 12th of July, 1875, and the bill having been filed on the 7th of July, 1877, it escaped the bar of the limitation prescribed by five days. The statute, therefore, does not affect the case, and may be laid out of view. No further remarks as to this aspect of the proceeding will be necessary.

The assets involved in this controversy were transferred to the appellants on or about the 20th of March, 1875. The bill proceeds upon the assumption, and charges, that the title vested in the assignee for all the purposes of this case on the 23d of February, 1875, and that hence, when the transfer was made by the bankrupt, he had no title and no control over the property. This is denied by the appellants. They insist that as the act of bankruptcy upon which the adjudication was founded was introduced into the petition by an amendment made on the

22d of April following, the title of the assignee cannot be held to have vested at an earlier time, and that Allen, therefore, had the title when he made the transfer.

The court below held according to the theory of the bill.

The statute is clear and imperative. Its constitutional validity is not questioned. It contains no qualification. We cannot interpolate what is claimed. Such a function is beyond the sphere of our power and duty. It is our business to execute the law as we find it, and not to make or modify it. In the disposition of property among creditors, equality is equity. It was the genius and purpose of the statute to secure this result as far as possible from the moment its aid was invoked, whether by debtor or creditor. The power of amendment is incident to all judicial administration. Its exercise is vital to the ends of justice. *Tilton* v. *Cofield*, 93 U. S. 163. The filing of the petition was a *caveat* to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication. If that were in his favor they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, *civiliter mortuus*. Those who dealt with his property in the interval between the filing of the petition and the final adjudication, did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result alone concerned them. In this case the title of the assignee is in all respects just what it would have been if the bankrupt had done nothing, and there had been no interposition by the appellants. Otherwise the efficacy of the act depended not upon its own language and meaning, but was only what others outside of the proceeding might choose to permit it to be. This would be a solecism, and largely defeat the purpose of the statute and the policy of Congress in enacting it. We concur entirely in the opinon of the Circuit Court upon the subject.

The bankrupt was under arrest upon civil process when the

transaction complained of by the bill occurred, and the appel-. lants knew of the filing of the petition against him, and of his utter insolvency when they received the assets.

Our opinion in this case disposes also of the other. The record shows that the rights of Witherow were settled and provided for by a decree in another litigation to which he and the assignee were parties. The cross-bills were properly dismissed.

*Decrees affirmed.*