### TAYLOR and others *v.* ROBERTSON and others.

*(Circuit Court, N. D. Illinois. April 14, 1884.)*

1. BANKRUPTCY— ESTATE OF ASSIGNEE IS THAT WHICH BANKRUPT HELD WHEN PETITION WAS FILED.

It was the purpose of congress, as evidenced by sections 5044, 5046, Rev. St., tit. "Bankruptcy," to clothe the assignee of the bankrupt with the latter's estate whenever such assignee should be appointed and a deed made to him in the same condition and plight as such estate was in when the petition in bankruptcy was filed.

2. SAME—SALE MADE BETWEEN FILING OF PETITION AND ADJUDICATION OF BANKRUPTCY—RIGHTS OF ASSIGNEE.

A sale made between the date of the adjudication of bankruptcy and the appointment of the assignee is at least voidable as against the assignee or those claiming under him.

Creditor's Bill.

*McCoy, Pope & McCoy,* for complainants.

*Paddock & Aldis,* for defendants.

BLODGETT, J. The questions in this cause arise upon the pleadings and proofs in a creditor's bill and several amended and supplemental bills filed thereafter. On the thirtieth of July, 1877, complainants Taylor and Bruce recovered, on the law side of this court, a judgment against William Scott Robertson for the sum of $21,786 and costs. On this judgment execution was duly issued to the marshal of this district, and returned "no property found," January 24, 1878; a creditor's bill in the usual form was filed by complainants, to which Francis B. Peabody, Benjamin E. Gallup, and others were made defendants, with the allegation "that they, or some one or other of them, have in their possession or control personal property, and hold title to real estate which belongs to said defendant Robertson, or in which he is some way beneficially interested." Due service of process was had on the defendants in this bill before the return-day thereof, and the defendant Peabody demurred to the bill for want of equity, and in March, 1878, his demurrer was sustained. No answer seems to have been filed by the other defendants, and no proceedings taken, until September 17, 1881, when an amended and supplemental bill was filed, and since then other amendments and

v.21F,no.4—14

supplemental bills have been filed, making Mehitable Green, widow of David R. Green, deceased, William W. Crapo, and Charles W. Clifford, trustees of the heirs of said David R. Green, and said Robert B. Green, Susan G. Page, Horatio N. Green, and Francis B. Green, heirs of said David R. Green, and E. A. Cummings, defendants; and these defendants have duly answered. The controversy, which has finally been brought to a hearing upon these amended and supplemental bills and answers, has reference to the validity of a sale under a trust deed, made by the defendant Peabody, and concerns only the property covered by this trust deed,—all the other matters in the original and amended bills having been abandoned by complainants.

The facts appearing in these pleadings and proofs, which seem to me necessary to consider for the purpose of disposing of·the case, are: That on or about April 1, 1871, one Nathan S. Grow, of the city of Chicago, borrowed of David R. Green, now deceased, then of New Bedford, Massachusetts, $35,000, payable in five years from said date, with interest at 8 per cent. per annum, payable semi-annually, and·to secure the payment thereof executed to the defendant Benjamin E. Gallup, as trustee, a trust deed conveying a valuable tract of land situated on the corner of West Madison and Sheldon streets, in this city, and described in the pleadings and proofs as the "Jefferson Park Hotel property." Some time in 1876 Grow sold and conveyed this property to the defendant Robertson, and Robertson assumed and agreed to pay this Green incumbrance. On the second day of April, 1877, Robertson, having negotiated with Robert R. Green for an extension or renewal of the Grow indebtedness for the further term of three years, executed and delivered to the defendant Peabody a trust deed of the same property, securing the payment of the said sum of $35,000 in three years, and interest thereon at the rate of $7\frac{1}{2}$ per cent., payable semi-annually, with full power to the trustee to sell the property so conveyed, in case of default in payment of the indebtedness so secured, after advertising the same in the manner provided by the trust deed, and out of the proceeds to pay the indebtedness so secured, and the costs of such sale, together with any money advanced for payment of taxes, assessments, or insurance. The trust deed also contained a clause that in case of default in the payment of interest, when the same should fall due, and for 30 days thereafter, or in case the premises, or any part thereof, should be sold for taxes or assessments thereon, the whole indebtedness should, at the election of the holder thereof, become immediately due and payable, and the trustee might be required to sell in the same manner as though the whole principal had become due and remained unpaid by lapse of time. It also appears that on the thirtieth day of August, 1878, Robertson, being in default in payment of the interest which had accrued in the preceding October and April, at·the urgent request and direction of said David R. Green, then the holder of said indebtedness, delivered to Mr. Peabody, the trustee, the possession of

the property, and the tenants duly attorned to Peabody. It also appears that on the thirty-first day of August, 1878, the day after placing Mr. Peabody in full possession of the premises, Robertson filed his voluntary petition in bankruptcy in the United States district court of this district, and was duly adjudged bankrupt, in pursuance of such petition, on the seventh day of September, 1878, and on the twenty-fourth day of July, 1879, Bradford Hancock was duly appointed assignee of the bankrupt's estate, and a deed made to him by the register conveying to him all the estate of the bankrupt. On the seventeenth day of June, 1880, said assignee in bankruptcy, pursuant to the order of the district court, sold and conveyed, by deed, to Lorin Grant Pratt, all the right, title, and interest of the bankrupt, and his right as assignee in and to this Jefferson Park Hotel property, with other property, for the gross sum of $3,305, subject to all liens, taxes, and incumbrances. On the fourth day of January, 1881, an *alias* execution was issued on the Taylor and Bruce judgment, directed to the marshal of this district to execute, and the marshal levied said execution on this hotel property, and the same was, on the twenty-seventh day of January, 1881, sold by the marshal, in pursuance of said execution and levy, to Lorin Grant Pratt, for the sum of $5,000, for which a certificate was duly issued by such marshal. It further appears that Mr. Pratt, in making these purchases at the assignee's and marshal's sales, acted solely as attorney and trustee for and in behalf of the judgment creditors Taylor and Bruce, and that the title so vested in Mr. Pratt, by virtue of these purchases, was taken by him, as naked trustee, for the benefit of his clients. On the fourth day of September, 1878, Mr. Peabody, as trustee, caused an advertisement to be published in the Chicago Weekly *Journal*, a weekly newspaper published in the city of Chicago, to the effect that he would sell this "Jefferson Park Hotel property" at public auction, pursuant to the powers in his said trust deed, on the seventh day of October, 1878, by reason of default which had been made by Robertson in the payment of the semi-annual interest falling due on the third of October, 1877, and the second of April, 1878, upon the indebtedness secured by said trust deed; and on the seventh of October, 1878, said Peabody, as such trustee, in pursuance of such advertisement, sold said premises at public auction, and the same were struck off and sold to David R. Green, and a deed of conveyance du'y made to him by such trustee. It further appears that said David R. Green, the purchaser of said property, has since died, and that the defendants Mehitable B. Green, his widow, and Robert B. Green, Susan G. Page, Horatio N. Green, and Francis B. Green, the children and heirs at law of said David R. Green, and defendants W. W. Crapo and Charles W. Clifford, as trustees of said heirs, are interested in said property, and claim to hold a valid and absolute title to said premises by virtue of the deed from Peabody, as trustee, to said David R. Green.

The amended and supplemental bills contain allegations charging that this sale was made by reason of a fraudulent and collusive understanding between Robertson and the trustee, by which he, Robertson, was to have the right to redeem the premises in question on payment of the indebtedness secured by this trust deed, and is therefore void as against the complainants, who were then judgment creditors of Robertson, and had a vested lien on said property by virtue of their judgment. Also that the notice, under which the trustee made the sale, was not properly published, as required by the terms of the trust deed, and that the sale was bad from the fact that the property was sold *en masse*, and not in parcels, and was made at a price grossly below the value of the property. It is also charged that this sale was void for the reason that it was made after Robertson was adjudged bankrupt, and before an assignee for his estate was appointed; and complainants claim to now be the equitable owners of all the estate and interest of the assignee in the property, by virtue of the purchase made by Mr. Pratt in their behalf.

I do not think the proof sustains the allegation of a collusive arrangement or understanding between the trustee and Robertson that Robertson was to have the right to redeem the property from the trustee's sale on payment of the debt and interest. Mr. Peabody denies any such agreement, and the proof tending to show it is too vague and uncertain to form the basis for relief on that ground. The proof, however, does show that Green, for some months before the sale, had been insisting upon the payment of his interest, and finally informed Robertson that he must turn over the rents of the premises to the trustee, or he should proceed to foreclose; and I have no doubt that Robertson believed that, having put the trustee in full possession, no foreclosure would be insisted upon, and that, in some way to be worked out between them after Robertson was through with his bankruptcy proceedings, he would be allowed to redeem on payment of the debt, interest, and taxes.

It may, I think, also be urged with much force that, inasmuch as the indebtedness was not due save at the election of Green, by reason of default in the payment of interest, and as the property was yielding an income fully adequate to meet accruing interest, taxes, and insurance, there was no equitable reason for forcing the property to sale after the trustee had been put in possession as mortgagee in possession. Mr. Green, or Mr. Peabody for him, could have made all needful repairs or improvements to secure or augment the income, —at least, until the debt was fully due; and the sale made, under the circumstances, might properly be deemed so harsh and unconscionable a proceeding as to justify the interposition of a court of equity; but as I do not propose to determine the case on this point, I only suggest it.

The notice seems to have been a sufficient compliance with the conditions of the trust deed. By the terms of the trust deed, the

trustee was empowered to sell the premises entire, without division, or in parcels, and in such parcels as he might elect; which, it seems to me, is a sufficient answer to the allegation as to the sale of the property *en masse*. Where a trustee is clothed with so ample a discretion as he was under this trust deed, a clear case of fraud, or such diminution in price as amounts to a willful fraud on the debtor, or those claiming under him, must, in my judgment, be made out in order to justify setting aside a sale for this reason. Some clear and tangible injustice must have resulted from the sale in bulk, in order to entitle a party in interest to call on a court of equity to set aside a sale made under such a power. As to the allegation that the property was sacrificed, or sold at too low a rate, this question may be considered further on.

The real question, it seems to me, is, was this sale, made after Robertson, the grantor in the trust deed, had been adjudicated a bankrupt, and before the assignee of his estate in bankruptcy had been appointed, a valid sale? In other words, did not bankruptcy suspend the exercise of the powers delegated by the trust deed to this trustee until there was an assignee chosen and qualified to act for this bankrupt's estate?

It will be remembered that Robertson filed his petition in bankruptcy on the thirty-first of August, 1878, and that no assignee in bankruptcy was appointed until June, 1879, and that the sale now challenged took place on the seventh of October, 1878, a little more than 30 days after the filing of the petition in bankruptcy. By section 5044, Rev. St., tit. "Bankruptcy," it is provided:

"As soon as an assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto, and such assignment shall relate back to the commencement of the proceedings in bankruptcy, and by operation of law shall vest the title to all such property and estate, both real and personal, in the assignee, although the same is then attached on mesne process as the property of the debtor, and shall dissolve any such attachment made within four months next preceding the commencement of the bankruptcy proceedings."

Section 5046 of same title provides:

"All the property conveyed by the bankrupt in fraud of his creditors; all rights in equity, choses in action, patent-rights, and copyrights; all debts due him or any person for his use, and all liens and securities therefor; and all his rights of action for property or estate, real or personal, and for any cause of action which he had against any person arising from contract, or from the unlawful taking or detention, or injury to the property of the bankrupt; and all his rights of redeeming such property or estate, together with the like right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend the same, as the bankrupt might have had if no assignment had been made,—shall, in virtue of the adjudication of bankruptcy and the appointment of his assignee, but subject to the exceptions stated in the preceding section, be at once vested in such assignee."

It would seem to have been the purpose of congress, as evidenced by these sections of the bankrupt law, to clothe the assignee of the bankrupt with his estate, whenever such assignee should be appointed and a deed made to him, in the same condition and plight as when the petition in bankruptcy was filed.

In *Bank* v. *Sherman*, 101 U. S. 403, the supreme court said:

"The filing of the petition was a *caveat* to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication. If that were in his favor they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, *civiliter morbus*. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction."

In *Re Grinnell*, 9 N. B. R. 29, it was held by Judge BLATCHFORD, after a careful analysis of the provisions of the bankrupt law touching the powers and estate vested in the assignee,—

"That the assignee is the only person who can represent the creditors other than the particularly secured creditor. Whether such other creditors are wholly unsecured or insufficiently secured, they have an interest in seeing that the debt of the particular secured creditor is duly proved, and is not fraudulent or illegal, and that the securities held for it are applied on it at their proper value, whether such value is ascertained by agreement between such particular secured creditor and the assignee, or by a sale. Before such application of the securities is made, the assignee has a right, on behalf of such other creditors, to elect whether he will redeem the pledged property by paying the debt and taking the property, or whether he will ask to have it sold subject to the lien, or whether he will give it up to the secured creditor on receiving an agreed sum as its excess of value over the debt. Nothing of all this can be done until there is an assignee. But the distinct principle of these provisions is that all valid liens which exist on the property of a bankrupt when the proceedings in bankruptcy are commenced, are preserved and will be respected by the bankruptcy court, and enforced and allowed to be paid out of the proceeds of the property on which they are liens. It is, however, confided to the bankruptcy court to determine whether the debt is valid, and whether the lien is valid, and to regulate the disposition of the property on which the lien is claimed. For this purpose, in involuntary cases, power is given to the court, by the fortieth section, to restrain the debtor and any other person from making any transfer or disposition of any part of the debtor's property not excepted by the act from the operation thereof, and from any interference therewith. This power is to be exercised when the order to show cause is issued, and is intended to restrain the disposition of the debtor's property until there can be an adjudication of bankruptcy, and proper proceedings thereafter. The same effects follow from the filing of a voluntary petition, for the debtor, in filing it, brings all his property under the protection and within the control of the court. * * *

"It nevertheless remains true that the filing of a petition in bankruptcy, whether voluntary or involuntary, (if followed by an adjudication and the appointment of an assignee,) operates, from the time of such filing, as a practical restraint on a pledgee of the property of the bankrupt, who is notified of such filing, from disposing of it otherwise than at his own risk, until the bankruptcy court can act in the premises. * * * The moment the pledgeor

is adjudged bankrupt, the pledgee can no longer deal with him, as continuing to be the owner of the property, or deal with the property as continuing to be the property of the pledgeor. If a demand of payment be necessary to be made of the pledgeor, or if a notice of sale of the pledged property be necessary to be given to the pledgeor, such demand cannot be made on or such notice given to the pledgeor after the adjudication, so as to cut off any rights which will belong to the assignee. It is as if the pledgeor were to die, and there were to be an interval between his death and the appointment of his executor or administrator, during which there would be no one to represent the estate of the pledgeor and to receive a demand or notice."

Also, in *Phillips* v. *Sellick*, 8 N. B. R. 390, it was said by Judge LONGYEAR—

"That all the creditors of the bankrupt, secured as well as unsecured, become and are at once, by virtue of the bankruptcy, parties to the proceeding, and they and their debts are thereby brought under and subject to the sole and exclusive jurisdiction and control of the bankruptcy court."

The same principle was applied by Judge TREAT in 2 N. B. R. 301, and by Judge LOWELL in *Foster* v. *Ames*, Id. 455; the learned judge in the latter case saying:

"The bankruptcy of the mortgagor changes or may change the remedies of the parties, although it preserves all their rights of property and securities."

In *Yeatman* v. *Savings Inst*. 95 U. S. 764, the supreme court said:

"Among the rights so vested at once in the assignee by virtue of the adjudication in bankruptcy, and of his appointment as such assignee, is the right to redeem the property or estate of the bankrupt. And, in order that it may be exercised for the benefit of creditors, the assignee is given express authority, under the order and direction of the court, to redeem and discharge any mortgage, or conditional contract, or pledge, or deposit, or lien, upon any property, real or personal, whenever payable, and to tender due performance of the conditions thereof, or to sell the same, subject to such mortgage, lien, or other incumbrance."

In *Conner* v. *Long*, 104 U. S. 228, the doctrine of *Bank* v. *Sherman* is reiterated, the court saying:

"Until an assignee is appointed and qualified, and the conveyance or assignment made to him, the title to the property, whatever it may be, remains in the bankrupt. It is equally true that when the assignment is made it operates retrospectively. The title of the bankrupt in the interval is defeasible, and, whenever the assignment is made, is divested as of the date when the petition was filed."

I might multiply citations, but it seems to me enough has already been quoted to substantiate the position that a sale made between the date of the adjudication of bankruptcy and the appointment of the assignee is at least voidable as against the assignee or those claiming under him.

The sale under this trust deed could only be made after the notice published in the manner provided by the instrument. The object of this notice was to inform the mortgagor, and those claiming under him, that a sale would be made. After the mortgagor is adjudged bankrupt, and until there is an assignee of his estate duly appointed and qualified, as provided by the bankrupt law, who is there upon

whom this notice can be operative? The bankrupt has no power to act in the premises; his control over the estate is at an end; he cannot pay off the incumbrances; he cannot negotiate with the mortgagee for an extension; he cannot obtain a new loan with which to liquidate the debt, and thereby prevent the sale; he can, in fact, do nothing except to appeal to the court in bankruptcy to interpose for the protection of the property; and his failure to do this waives no right of the assignee when appointed.

In view of the wrong which had been perpetrated upon various estates by the exercise of these powers of sale after the death of the mortgagor or grantor in trust deeds and sale mortgages, the legislature of Illinois, in 1869, provided that no sale should be made under a power after the death of the mortgagor. The principle stated by the supreme court in *Bank* v. *Sherman*, is, in effect, that the adjudication of bankruptcy is the civil death of the bankrupt, so far as the management of the estate of the bankrupt is concerned, and his estate must remain *in statu quo* until an assignee is appointed who can act for it.

If section 5044 means anything, it seems to me it must and does mean that when the assignee becomes clothed with the title by virtue of a deed from the judge or register, he takes the title precisely as the bankrupt left it when the petition in bankruptcy was filed; all that has been done in the interval between the filing of the petition and the deed to the assignee goes for naught as against the assignee, as it would as against the bankrupt, if no adjudication of bankruptcy should be made and the petition be dismissed.

It is true that the district court in bankruptcy may, on application made to it, either by the bankrupt or any person interested in his estate, in the exercise of its discretion, authorize a trustee or mortgagee to proceed and sell the property covered by the mortgage or trust deed under the powers, before the appointment of an assignee; but I am very clear, in the light of the statute and the decisions, so far as they have gone, that a sale made under a power like this, after adjudication, and before the appointment of an assignee, is voidable, either on the application of the assignee or those claiming under him, unless it is made by leave of the court.

In this case it appears that the assignee sold the equity of redemption of the bankrupt in this property on the seventeenth of June, 1880, and an amendment to the bill challenging the validity of the trustee's sale was made on the seventeenth of September, 1881. The position of the parties, so far as diligence is concerned, is substantially the same, perhaps, for the purpose of this question, as if no bill had been filed until the seventeenth of September, 1881, when the first amendment and supplemental bill was filed, which was nearly three years after the adjudication in bankruptcy, and nearly two years after the assignee had been appointed. There is no proof that any such change of interest in the property has taken place as to pre-

clude this court from making substantially the same decree as it could have made if the bill had been filed immediately after the sale, and during the life-time of David R. Green. It appears that David R. Green died intestate, and the property in question descended to his heirs at law; but by some means it also appears to have been vested in certain trustees for the benefit of their heirs at law. These persons are not purchasers, but heirs possessing no greater equities than David R. Green himself would possess, if living; they have paid no value for this property, but take and hold the title subject to all equities against their ancestor.

It appears from the proof in this case that, at the time Robertson filed his petition in bankruptcy, the property in question, but for an apparently fraudulent or collusive agreement between the bankrupt and one McAllister, whereby McAllister's rent, as lessee, of a portion of the property, was reduced from $300 per month to $30 per month, should have been yielding a gross income of about $7,000 per annum; and, with some slight repairs and alterations, changing the premises from a hotel into flats for rental purposes, at an expenditure of between three or four thousand dollars only, the premises are now yielding a gross income of nearly $7,000 per annum. Aside from the opinion of various witnesses in the record as to the value of the property, the proof as to the income derivable from it shows that this property, at the time of the sale in question, was intrinsically worth a great deal more than the amount of the Green indebtedness, secured by the trust deed to Mr. Peabody. This large margin of value, over and above the secured indebtedness, should have been made available to the creditors of Robertson's estate. They had the right, it seems to me, to be heard, and to determine whether they would pay off the Green indebtedness and take the property, or whether they would elect to have the property sold by the assignee, free and clear of incumbrances, and the incumbrances paid off in their order of priority. In other words, it was not just or equitable towards the other creditors of Robertson, and especially towards the junior lien of complainants, by their judgment, that this large fund available for their payment, or partial payment, should be completely wiped out by this trustee's sale, when there was no one who could interpose for the purpose of protecting the estate.

The evidence in this case shows that Robertson, the bankrupt, immediately after filing his petition, left the United States, and has lived abroad in Scotland ever since that time, and that Taylor and Bruce, the judgment creditors, also reside in Scotland, and that the attorneys, who represented them here, had no actual knowledge of this sale until after they had purchased the property at the assignee's and marshal's sales, as I have heretofore stated. The price paid by Mr. Pratt, as the representative of these judgment creditors, at the assignee's and marshal's sales, showed that these creditors, through their attorneys, were acting in good faith, upon the assumption that

the property was simply in the possession of the trustee for the benefit of Green, the secured creditor, and that he was collecting the rents and applying them upon the interest and principal of the indebtedness, and that whoever purchased the title at this ·assignee's sale would have the right to redeem from this mortgage.

It therefore seems to me that this bill was filed within a reasonable time, when all the circumstances are considered. The purchasers have been in possession of the property; they have made no such disposition of it as makes it impossible for a court of equity to do substantial justice to all the parties in interest at this time.

A decree will therefore be entered directing an account to be taken of the amount due upon the secured indebtedness by the trust deed, and of the amount expended by David R. Green and those representing his estate in the payment of taxes and for repairs, and of the amount received for rents; and that, upon the payment of the amount so stated and found due, the complainants shall have the right to redeem the premises from said trust deed and have it conveyed to them.