THE HON. WILLIAM L. HOLLOWAY, 
THE HON. HENRY C. SMITH,
} Associate Justices.

---

HAMILTON, APPELLANT, *v.* SMITH ET AL., DEFENDANTS; J. N. NEVILLS CO., RESPONDENT.

(No. 2,420.)

(Submitted October 3, 1907. Decided October 21, 1907.)

[92 Pac. 32.]

*Bankruptcy—Effect of Petition—Chattel Mortgages—Transfer of Property and Lien—Effect—Decisions of Supreme Court of United States—Conclusiveness.*

Bankruptcy—Mortgages—Sales After Petition—Effect.
  1.  On June 9, 1902, a petition was filed in the United States district court to have a mortgagor of certain chattels declared a bankrupt. At this time the mortgagee was in possession of the property. On June 10th the mortgagor and mortgagee transferred their respective interests in the chattels to a company formed on the day preceding, receiving therefor shares of its stock. Subsequently the mortgagor was adjudged a bankrupt. The receiver, who later was appointed as trustee in bankruptcy, on June 12th commenced an action in claim and delivery to recover possession of the chattels transferred to the company. *Held,* that the company by the transaction did not simply step into the shoes of the mortgagee, but discharged his claim and left the

chattels free from the mortgage lien, and that the sale of the chattels, made after the filing of the petition in bankruptcy and before final adjudication, was voidable at the election of plaintiff trustee.

Same—Mortgages—Merger.

2. Assuming that the mortgagor, referred to in the foregoing paragraph, sold his interest in the chattels to the company, and the mortgagee assigned his mortgage debt to it at the same time, the lien ceased to exist in that case also, since the lesser estate—the mortgage lien—became merged in the greater, represented by the legal title conveyed by the mortgagor.

Same—Filing of Petition—*Caveat.*

3. The filing of a petition in bankruptcy is in effect a *caveat* and gives notice to all the world; so that a sale of property belonging to a bankrupt, when made after the filing of such a petition and before final adjudication, is voidable at the option of the trustee in bankruptcy.

Same—Decisions of Supreme Court of United States—Conclusiveness.

4. In construing the provisions of the Bankruptcy Act, a decision of the supreme court of the United States directly applicable to the question presented to a state court is conclusive.

*Appeal from District Court Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by James L. Hamilton, as trustee in bankruptcy of the estate of L. N. Nevills, against D. C. Smith, and the J. N. Nevills Company. From a judgment in favor of the Nevills Company, and from an order denying him a new trial, plaintiff appeals. Reversed and remanded.

*Mr. John A. Shelton,* for Appellant.

The filing of a petition in bankruptcy is in substance and effect an attachment and injunction, and it places the property of the bankrupt constructively in the custody of the court of bankruptcy. (Loveland on Bankruptcy, sec. 150; *In re Weinger, Bergman & Co.,* 126 Fed. 875.) Property on which there is a mortgage or other lien passes to the trustee in bankruptcy. It is, therefore, in the custody of the court of bankruptcy. (*In re Rochford,* 124 Fed. 182, 59 C. C. A. 388; *In re Kellogg,* 121 Fed. 333, 57 C. C. A. 547; *Chauncey* v. *Dyke Bros.,* 119 Fed. 1, 55 C. C. A. 579; *In re Booth,* 96 Fed. 943.) The absolute right of possession to the mortgaged property is in the receiver or trustee in bankruptcy. (*In re Kaplan,* 144 Fed. 159; *In re Knight,* 125 Fed. 35; *In re*

*Jersey Island Packing Co.,* 138 Fed. 625, 71 C. C. A. 75, 2 L. R. A., N. S., 560.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 28, 1902, J. N. Nevills executed and delivered to D. C. Smith his promissory note for $2,940, due June 2, 1902, and to secure the payment of the same executed and delivered to Smith a chattel mortgage upon a stock of goods in Butte. The chattel mortgage was not filed for record until June 3, 1902, when a certified copy was placed in the hands of the sheriff of Silver Bow county, and he directed to sell the mortgaged property to satisfy the note, no part of which had been paid. The property was noticed for sale on June 9th, but before the sale was commenced a restraining order was secured, the sale abandoned, and the possession of the property turned over to Smith. On June 9th a petition was filed in the United States district court for the district of Montana by certain creditors of Nevills, asking that he be adjudged a bankrupt. On the next day, upon petition, James L. Hamilton, was appointed receiver to take charge of the property of Nevills and qualified as such receiver on June 11th, made demand for the possession of the stock of goods, and, upon being refused, commenced this action in claim and delivery on June 12th. In the meantime, on June 9th, a corporation called the "J. N. Nevills Company" was organized, and the articles of incorporation filed. On June 10th Smith and Nevills each transferred to the J. N. Nevills Company his interest in the stock of goods and received therefor shares of stock in the company. Afterward Nevills was adjudged a bankrupt, and Hamilton, who had been receiver, was now appointed trustee in bankruptcy, and substitution made in the proceedings. This action was commenced against Nevills, Smith, and the J. N. Nevills Company. Nevills defaulted, and upon the trial the plaintiff dismissed the action as against the defendant Smith. Upon the conclusion of the evidence the court granted a motion made by the defendant company and instructed the jury to return a verdict in its favor,

which was done, a judgment entered upon the verdict, and from that judgment, and an order denying him a new trial, the plaintiff appeals.

Upon the trial the plaintiff offered in evidence the files from the United States district court showing the filing of the petition in bankruptcy, the adjudication in bankruptcy, the petition for the appointment of a receiver, the order appointing the receiver, the oath and bond of the receiver, the bond of the trustee, the order approving that bond, and also the minutes of the Nevills Company showing the election of its officers and the transfer by Nevills and by Smith to that company; also the articles of incorporation of the company; and further offered evidence tending to show the value of the stock of goods and the fact that a redelivery bond had been given by the J. N. Nevills Company and the stock of goods returned to it after this action had been commenced. On behalf of the defendant company, evidence was offered which tended to show that Smith, the mortgagee, was in possession of the stock of goods from the third day of June until the 10th of June; that on that day the possession was delivered to the defendant company; that Smith was the president of that company, its largest stockholder and its manager; and that Nevills was a director and secretary of the company. The note and chattel mortgage given by Nevills to Smith were introduced. This was all the material evidence offered, and from this it appears that at the time of the filing of the petition in bankruptcy Smith was in the possession of the property under his chattel mortgage, and had he elected to continue to so hold it he could, so far as the record discloses, have successfully contested the claim of the plaintiff. But the rights of Smith were not adjudicated; in fact, the action was dismissed as to him and proceeded only as against the Nevills Company. That company and Smith were distinct persons, notwithstanding Smith was the largest stockholder in the company. The question for determination then was: What were the relative rights of the plaintiff and the company to the possession of the property at the time this action was commenced, on June 12, 1902?

Whatever may have been the rights of Smith, there cannot be any claim advanced upon this record that the company merely stepped into his shoes. There is not any pretense that Smith merely assigned his mortgage debt to the company. The sale of the property to the company was made by Nevills, who was the holder of the legal title to the property, and this sale was made after the petition in bankruptcy had been filed. Smith merely had a claim against Nevills which was secured by a lien upon the property. The company assumed to purchase the property from Nevills, and paid off and discharged Smith's claim. His debt was paid, and his lien discharged in law, if not in fact upon the record; and it is altogether immaterial that he accepted shares of stock in payment for his debt instead of demanding the money. This was the legal effect of the transaction, so far as this record discloses.

But even under the most favorable view which could be taken of the transaction—that Nevills sold his interest in the property, and Smith assigned his mortgage debt to the company—still the same result must be reached, for when the greater estate in the property, represented by the legal title which Nevills conveyed, and the lesser estate, represented by such mortgage lien so conveyed by Smith, coincided in one and the same person, the J. N. Nevills Company, at the same time and in the same right, the lesser estate at once became merged in the greater one, and the lien ceased to exist. This is the rule upon the showing made by this record. (20 Ency. of Law, 2d ed., 1064, and cases cited.)

The sale to the company, after the filing of the petition, and before the final adjudication in bankruptcy, was voidable at the election of the trustee. Under the present Bankruptcy Act of July 1, 1898 (Chapter 541, 30 Statutes at Large, 544 [U. S. Comp. Stats. 1901, p. 3428]), as under the Bankruptcy Act of 1867, the filing of a petition to have one adjudged a bankrupt is in effect a *caveat*, and, the proceedings being *in rem*, gives notice to all the world. (*Mueller* v. *Nugent*, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; *In re Weinger, Bergman & Co.* (D. C.), 126 Fed. 875.)

In speaking of the Bankruptcy Act of 1867, the supreme court in *Bank* v. *Sherman,* 101 U. S. 403, 25 L. Ed. 866, said: "The filing of the petition was a *caveat* to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication. If that were in his favor, they revived and were again in full force. If it were against him, they were extinguished as to him and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, *civiliter mortuus.* Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result alone concerned them. In this case the title of the assignee is, in all respects, just what it would have been if the bankrupt had done nothing, and there had been no interposition by the appellants. Otherwise, the efficacy of the Act depended, not upon its own language and meaning, but was only what others outside of the proceedings might choose to permit it to be. This would be a solecism, and largely defeat the purpose of the statute and the policy of Congress in enacting it." This is directly applicable to the case at bar and conclusive upon this court, the question directly involved being the construction of a federal statute.

For the reasons stated, the judgment and order are reversed and the cause is remanded, with direction to the district court to grant the plaintiff a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.