George M. Norton, as Executor, Etc., Plaintiff, *v.* Julius Bielby et al., Defendants.

(County Court, Oneida County, August, 1914.)

Bankruptcy — filing of petition in — when service of order in proceedings supplementary to execution not a contempt of court — failure of judgment debtor to appear on adjourned day constitutes contempt of court.

The filing of a petition in bankruptcy by a judgment debtor on whom an order in proceedings supplementary to execution has been served and is pending is not a contempt of court.

Where, however, the judgment debtor fails to appear on the day to which his examination under the order in supplementary proceedings had been adjourned, which was the day after his adjudication as a bankrupt, he is guilty of a contempt of court.

Motion in proceedings supplementary to execution to punish defendant for contempt of court.

H. C. Sholes, for motion.

A. S. Malsan, opposed.

Hazard, J. An order was granted by the Oneida county judge May 15, 1914, in the usual form, requiring defendants to appear for examination concerning their property, before a referee. A brief examination was had on the return date and the proceedings were

duly adjourned to May 26, 1914, and defendant Bielby was directed to appear for further examination. This direction of the referee he failed to comply with, but on the 25th day of May, 1914, he filed a petition in bankruptcy and was duly adjudged bankrupt. The motion is made upon the ground and claim that the filing of the voluntary petition in bankruptcy was in violation of the injunction clause in the original order of this court, and, secondly, that the failure to appear on the adjourned day before the referee in supplementary proceedings was also a contempt of court. It appears that the attorney for the bankrupt notified the plaintiff's attorney, and perhaps the referee, of his client's action in filing a petition in bankruptcy, and that he would not appear. There is no controversy with reference to any of the facts, but defendant's attorney contends that his client, notwithstanding the restraining order, might still file a petition in bankruptcy, and that doing so relieved him from any further obligations in the way of appearances in the supplementary proceedings in the state court. We will consider the defences in the order named. I am unable to find any cases holding that the filing of a petition in voluntary bankruptcy by a judgment debtor upon whom an order in supplementary proceedings has been served and is pending is a contempt of court, and no such case is cited by the moving party herein. I think the absence of such citation is significant, because it is doubtless true that in very many instances during the many years in which the present bankruptcy act has been in force many debtors have relieved themselves of burdensome orders in supplementary proceedings by filing voluntary petitions. It is doubtless true, as claimed by the moving party, that the filing of a petition in bankruptcy is an interference with and disposition of the debtor's property, and perhaps it

may be said that it is as effectual a disposition as a debtor can possibly make; and if we were to be bound by a strict construction of the words contained in the supplementary proceedings order, and cannot look beyond them and consider their spirit and intent, we must hold there is a violation of the injunction clause. However, I am not inclined to make a pioneer decision to that effect, because I do not believe that the act in question is such a disposition of or interference with the judgment debtor's property as is contemplated by the restraining order heretofore made by this court. The purpose of the bankruptcy act is to insure a fair and equitable division of the bankrupt's property among all his creditors, and, in order to insure that result, it is provided: "That all levies, judgments, attachments or other liens obtained through legal pro-ceedings against a person who is insolvent, at any time within four months prior to the filing of the petition in bankruptcy against him, shall be deemed null and void in case he is adjudged bankrupt," etc. Bankruptcy Act (July 1, 1898), § 67, subd. F.

Keeping the above provision in mind, and also the fact that the plaintiff's judgment herein was obtained February 20, 1914, and within four months prior to the adjudication in bankruptcy, it would appear that any possible advantage which plaintiff may have obtained by, through or under his judgment, was lost by the adjudication in bankruptcy. The question remains as to whether the defendant might inflict this loss upon plaintiff, in view of the restraining order, or whether in view of that order he should be held not to have the right to file a voluntary petition. To so hold would be to decide that the only way a man upon whom a judge's order had been served might get into the bankruptcy court would be by way of involuntary proceedings instituted by other creditors, a ruling

which I am not prepared to make in the absence of authority on the subject. It is an undoubted fact that in matters of bankruptcy the authority of the United States court is paramount, and it has also been said to be "exclusive." See *Matter of Watts*, 190 U. S. 1.

Upon the authority of that case I think I must hold that the filing of the voluntary petition in bankruptcy by this judgment debtor was not a contempt of this court.

The moving party cites as an alleged authority the case of *Spaid* v. *Hage*, 1 N. Y. Wkly. Dig. 24, claiming that it is an authority and a case directly in point on the proposition that the filing of a petition was a contempt. A careful reading of that case clearly discloses that the defendant had got into contempt in the state court before he filed his petition by failing to appear for examination. The Court of Common Pleas held that he was guilty of contempt, but presumably the contempt referred to was the disobeying of the order before the petition was filed.

It was held in the case of *National Wall Paper Co.* v. *Gerlach*, 15 Misc. Rep. 640, and in the case of *Canda* v. *Golliner*, 73 Hun, 493, that the making of a general assignment, even without preferences, was in violation of a supplementary proceedings order, and the plaintiff's attorney urges that these cases are analogous in principle to the one at bar. Upon reading both of those cases it will be observed that the decision turns upon the fact that "the plaintiffs were injured by this act; they had taken steps by which they could have had the first lien on the estate, real and personal, of the judgment debtor." Therein I think the Bankruptcy Law is to be differentiated from the State Assignment Law, because of the *ex post facto* effect of the Bankruptcy Law, already referred to.

The question remains as to whether the defendant was justified, having filed his petition, in failing to appear before the referee, as he had been directed to do. In defence of that action his counsel cites *Matter of Breslauer,* 10 Am. Bank Rep. 33, and cites a quotation therefrom by Judge Ray to the effect that " the filing of a petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction." Here again if we are to take this language literally, and if a filing of a petition in bankruptcy is both a caveat and injunction, the defendant may have been well advised to stay away from the supplementary proceedings, and, in fact, if an adjudication in bankruptcy is both a caveat and injunction, it would be perilous for those acting under the orders of the state court to proceed at all. I do not think the language quoted was designed to have any such effect. The citation given by Judge Ray is *Mueller* v. *Nugent,* 184 U. S. 1, where we find the same language quoted, but as there appears it was originally used by the court in *Bank* v. *Sherman,* 101 U. S. 403. Having recourse to that case where the expression originated, we find that therein, as in both the other cases where the words in question had been used and quoted with approval, it was applied only to property rights. The language as it originally appeared in *Bank* v. *Sherman, supra,* is as follows: " The filing of the petition was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were *ipso facto* in abeyance until the final adjudication." I do not think the *dictum* should be extended beyond what it was originally intended to cover and what it was applied to in the three cases cited, viz.: property rights, and it is, therefore, not an authority for the proposition that a judgment debtor may treat with contempt the orders

of a state court, even if he has placed his property and himself in the bankruptcy court.

While I think that this defendant was within his rights in filing a voluntary petition, notwithstanding the restraining order, and notwithstanding the undoubted supremacy of the United States courts, he was still bound to obey the orders of the state courts, or, by taking the proper procedure, relieve himself therefrom. This opinion finds its foundation and support in the fact that General Orders in Bankruptcy provide apparently for just such a case as this, rule XII, section 3, which says that " an injunction to stay proceedings of a court or referee of the United States, *or of a state,* shall be heard and decided by the judge." It is probably true that the proceedings in the state court were to all intents and purposes rendered ineffectual by the bankruptcy proceedings, a fact so palpable that I have no doubt the defendant might have obtained an order relieving him from further appearances in any of the state courts of competent jurisdiction, as well as from the United States courts under the rule just quoted. However, I do not think it rested with the bankrupt to say that he should disregard the plain orders of the state court. I, therefore, find and decide that the judgment debtor's failure to appear before the referee on the 26th day of May, 1914, was a contempt of court for which the defendant Bielby is fined punitively the sum of twenty-five dollars. An order imposing such fine may be prepared accordingly.

Ordered accordingly.