**In re ROSEN et al.**

No. 4083a.

District Court, D. New Jersey.

June 6, 1946.

Furst & Furst and George Furst, all of Newark, N. J., for trustee in bankruptcy.

Max L. Rosenstein, of Newark, N. J., for Standard Factors Corporation.

Hood, Lafferty & Emerson and Alan V. Lowenstein, all of Newark, N. J., amici curiæ.

FAKE, District Judge.

The issues here arise on a petition to review an order of the Referee dated February 23, 1945, wherein it is decreed that Simon F. Fisch as trustee in bankruptcy has title to all the accounts receivable of the bankrupts and the proceeds thereof free of any right or title in Standard Factors Corporation, a prior assignee of said accounts.

It appears from the Referee's findings of fact that bankrupts were engaged in the wholesale produce business at Newark, New Jersey; that they entered into an agreement with Standard Factors Corporation dated April 21, 1942 whereby Standard agreed to purchase, from time to time, accounts receivable due and owing to bankrupts. Pursuant to this contract, bankrupts executed and delivered to Standard some 45 written assignments transferring to Standard certain groups of accounts. These transactions were consummated between April 22, 1942 and November 16, 1942 inclusive. The agreement provided among other things that Standard was to take these assigned accounts as collateral security and would advance 75% of the face of such accounts to the bankrupts. Such percentage was so advanced by Standard in each instance in the regular course of business and without notice of insolvency, actual or constructive, save only as to the accounts assigned under date of November 16, 1942. At that time the assignee had actual notice of insolvency, and has waived its claim to said accounts.

The bankrupts filed their petition herein on November 23, 1942 and the Referee properly states the issue before him as follows: "Were the assignments made by the bankrupts to Standard Factors Corporation invalid as against the trustee?" He answers this in the affirmative, basing his conclusion on a finding that the assign-

ments, notwithstanding their prior dates and the manner and method of their consummation, were preferences as against the trustee, and that constructively they did not take effect until either November 18, 1942 or November 23, 1942 at which times Standard had knowledge of bankrupts' insolvency.

I find that I am unable to agree with the result arrived at by the learned Referee. He labored, and this court is here laboring, in a sphere in which it cannot be said that the law is altogether crystal clear. The Referee has stated his position in a carefully prepared memorandum, as yet unpublished, and the better to understand the problems involved, so much thereof as is pertinent will be quoted. He says:

"The contracts between these parties were made in New Jersey and were to be performed in New Jersey. It is the law of the place of performance of the *assigned* contract or account that determines which of successive assignees is entitled to the account. (Restatement of Conflict of Laws, Sections 353, 354, 366). The rights of the Trustee in Bankruptcy as against Standard Factors Corporation are to be determined by the laws of New Jersey and Section 60, sub. a of the Bankruptcy Act [11 U.S.C.A. § 96, sub. a].

"Under Section 60, sub. a of the Bankruptcy Act ' * * * a transfer shall be deemed to have been made at the time when it became so far perfected that no bona fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before bankruptcy.'

"In Corn Exchange Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189, it was held under Section 60, sub. a that assignments of accounts were preferences where the assignees gave no notice of the assignments to the debtors whose accounts were assigned and where under the law of the state in which the transactions took place a subsequent good-faith assignee, giving such notice, would acquire rights superior to the assignees.

"There are two cases in New Jersey dealing with the question of whether notice is necessary to make the transfer of a chose in action complete. In the case of Jenkinson v. New York Finance Co., 79 N.J.Eq. 247, 82 A. 36, it was held that the second assignee of a legacy prevailed over the first assignee since the second assignee first gave notice of his assignment to the executor. In the case of Moorestown Trust Co. v. Buzby, 109 N.J.Eq. 409, 157 A. 663, it was held that the first of two assignees would prevail irrespective of the giving of notice. Jenkinson v. New York Finance Company follows what has been called the English rule and Moorestown Trust Co. v. Buzby follows what has been called the Massachusetts rule.

"There was recently pending in the Court of Chancery of New Jersey a case involving the validity of assignments of accounts under Section 60, sub. a of the Bankruptcy Act and it seemed quite probable that there would be a determination of the effect of Section 60, sub. a in New Jersey in view of the apparent difference of rule in the cases of Jenkinson v. New York Finance Co. and Moorestown Trust Company v. Buzby. This case, however, has been decided on other grounds and without considering the cases of Jenkinson v. New York Finance Company and Moorestown Trust Company v. Buzby.

"In the case of In re Vardaman Shoe Co., D.C.Mo., 52 F.Supp. 562 the court dealt with assignments that were held by banks located in the state of Illinois, made by a corporation which was a resident in and doing business in the state of Missouri. There had been no notice of the assignments given to the debtors. Missouri followed the English rule, but Illinois followed the Massachusetts rule. The court held that under either rule the assignment constituted preferences under Section 60, sub. a of the Bankruptcy Act. If notice were necessary to make the assignment valid against a bona fide purchaser and notice had not been given, the assignments were void as against the trustee. Corn Exchange Bank v. Klauder, supra. But the court went further and held that even in states which adopt the Massachusetts rule that a subsequent assignee cannot de-

feat a prior assignee simply by giving notice to the debtor, there are certain circumstances under which an assignment may be defeated by a bona fide purchaser. These instances are set out in the Restatement of the Law of Contracts, section 173, which adopts the Massachusetts rule. Under this rule an assignment may be defeated by a subsequent assignee who acts in good faith, if the subsequent assignee receives payment of the assigned account, obtains a judgment against the obligor, obtains a new contract with the obligor by means of a novation, or receives the delivery of a tangible token or writing, surrender of which is required by the obligor's contract for its enforcement. The court held therefore that, under either rule, Section 60, sub. a of the Bankruptcy Act made the assignments invalid as against the trustee in the case of Vardaman Shoe Co., supra.

"Under the rule of Jenkinson v. New York Finance Co., the assignment to Standard Factors Corporation became complete on November 18, 1942, when Standard Factors Corporation notified the customers of the bankrupt. Under the rule of Moorestown Trust Co. v. Buzby, supra, at any time up to the filing of the petition in bankruptcy, a bona fide purchaser could have defeated the assignments to the Standard Factors Corporation by obtaining payment of the accounts, obtaining a judgment upon them, or by means of a novation. (Section 173 of the Restatement of the Law of Contracts is cited in Moorestown Trust Co. v. Buzby, supra, 109 N.J. Eq. at page 412, 157 A. 663). Whether the rule of Jenkinson v. New York Finance Co. or the rule of Moorestown Trust Co. v. Buzby represents the law of New Jersey, the assignments to the Standard Factors Corporation constituted preferences under Section 60, sub. a of the Bankruptcy Act. In re Vardaman Shoe Co., supra.

"Under the rule of Jenkinson v. New York Finance Co., the assignments became effective on November 18, 1942. Under the rule of Moorestown Trust Co. v. Buzby, the assignments became effective on November 23, 1942, when the petition in bankruptcy was filed. In either event the assignments were given to secure antecedent debts, as the money had been advanced by Standard Factors Corporation long before either of these dates. The bankrupts were insolvent on both dates. The effect of the assignments on either date would be to give the Standard Factors Corporation a greater percentage of its debt than other creditors would receive. This appears from an inspection of the schedules and the testimony of the accountant. Standard Factors Corporation, on both of these dates had reasonable cause to believe that the bankrupts were insolvent.

"I conclude, therefore, that the transfers to Standard Factors Corporation are preferences and invalid as against the trustee in bankruptcy."

The two New Jersey cases last above cited are in conflict, and since they have their origin in the same court, the later case establishes the law to be followed here. By the opinion in the earlier case New Jersey took its position among those states which require notice to perfect an assignment. This occurred in the year 1911, but in the Moorestown Trust Co. case some 21 years later (1932) the court took the opposite view and placed New Jersey among those states wherein an assignment may be perfected regardless of notice and this position is maintained by the New Jersey Court of Chancery down to this writing. For present purposes emphasis should be placed upon this rule of law and it ought not to be weakened or dissipated by decisions handed down in jurisdictions where a contrary rule as to notice obtains. The Bankruptcy Act alone can qualify or limit its effect here.

Each of the assignments with which we are dealing were bona fide and fully consummated when executed, as will appear from the undisputed evidence in the record. That the trustee can take no greater estate than that of the bankrupt is the generally accepted rule and in the absence of some provision to the contrary in the Bankruptcy Act the conclusion here must be that these assignments are valid as against the trustee.

178

In Corn Exchange Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 681, 87 L.Ed. 884, 144 A.L.R. 1189, the court was dealing with a problem bearing on the sufficiency of assignments under Sec. 60, sub. a of the Bankruptcy Act and in the light of the substantive law of Pennsylvania, a state requiring notification to sustain an assignment. From this case it appears that the Supreme Court has not as yet changed the rule as to the application of state law on such issues. Referring to Sec. 60, sub. a, the court says: "Its apparent command is to test the effectiveness of a transfer, as against the trustee, by the standards which applicable state law would enforce against a good-faith purchaser. Only when such a purchaser is precluded from obtaining superior rights is the trustee so precluded." The court then continues: "So long as the transaction is left open to possible intervening rights to such a purchaser, it is vulnerable to the intervening bankruptcy."

This leads to a consideration of the law of New Jersey and what the possible intervening rights may be in this state. It is, of course, obvious here as elsewhere that "one cannot have his cake and eat it too" so if the assignments were perfected and valid when and where made, they remain valid against the trustee, and he takes nothing which the bankrupt had theretofore, validly disposed of. However, under the rule in the Corn Exchange Bank, supra, and the insertion therewith of Section 173 of the Restatement of the Law of Contracts it is found by the Referee that such completed assignments may subsequently be construed as having been made "immediately before bankruptcy." He holds that the assignments here may be constructively so re-dated upon some four premises found in Section 173 of the Restatement of the Law of Contracts. It is necessary therefore to consider separately each of these premises and ascertain their effect with special reference to New Jersey law and the intent of Sec. 60, sub. a of the Act.

(1) The Referee concludes that these assignments may be construed as above stated in point of time, "if the subsequent assignee receives payment of the assigned account." Assuming for present purposes, that the trustee in bankruptcy stands in the position of a subsequent assignee clothed with the qualities of a 'bona fide or "good-faith purchaser." In this jurisdiction, where an assignment is valid without notice, he would take nothing by such legally imposed assignment. Nor can it be said on the face of this record that the trustee has received payment, constructively or otherwise. Such a construction would fly in the face of the truth. No such payment was made. Hence nothing is left open to "possible intervening rights" under this heading.

(2) It is ruled that if the trustee stands as a subsequent assignee and "obtains a judgment against the obligor" the date of the prior assignments may be theoretically advanced as above. For present purposes it is my view that the trustee does stand in the position of a judgment creditor protected by an attachment, an injunction, and a caveat to the world. International Bank v. Sherman, 101 U.S. 403, 25 L.Ed. 866; Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405; and, if it be that the obligor, above referred to, is the debtor in the assigned accounts it would follow that the trustee here, being fortified by a redated assignment could set it at naught. However, when the trustee stands in the shoes of a judgment creditor, who is the judgment debtor? It must be the bankrupt since the judgment in attachment runs only against the bankrupt's property tangible and intangible. The effect of this judgment runs from the date of the filing of the petition. At that instant the prior assignments were valid as against the bankrupt and all others and they could not be attacked or attached by anyone. It follows that these assignments cannot be subsequently attacked by the trustee since, when his rights took effect no "possible intervening rights" were outstanding. I know of no New Jersey case or statutory law to the contrary of this view and as I read the pertinent provisions of Section 173 of the Restatement of the Law of Contracts, it does not sound to the contrary (see illustration three thereof). Strictly speaking we are dealing here with the subject of as-

signments wherein the relation of assignor and assignee are concerned: not with bonds where obligor and obligee are to be considered.[a]

(3) It is further found that the trustee, standing in the shoes of a subsequent assignee, "obtains a new contract with the obligor by means of a novation." There can be no novation here in the absence of an agreement between the prior assignee (Standard Factors) and debtor under an assigned account or by the debtor with some third party. No such novation appears nor can it be said that the way was open to such substitution of a new agreement or obligation for an old one. This is because the prior assignment remained a closed transaction down to and including the date of bankruptcy. In short, the transaction was not "left open to possible intervening rights." It may be well to state at this point that I do not construe the language above quoted from the Corn Exchange Bank, supra, to imply that the lower courts may imagine conditions which have no foundation in fact. To do so would be to make the subject ridiculous. This court cannot imagine, for example, the absence of a validly consummated assignment to Standard Factors when one actually exists, nor can it imagine impossible or unlawful conduct on the part of the parties thereto for the purpose of invalidating it. There must be valid evidence on which to make such findings.

(4) Again, it is thought that the trustee standing in the shoes of an assignee "receives the delivery of a tangible token or writing, surrender of which is required by the obligor's contract for its enforcement" and by virtue thereof the prior assignments are postponed and invalid. If the debtor of the assigned account is to be considered as the obligor and the trustee has such "token or writing" ex officio. What is the writing and what are its terms? The writing is the decree in bankruptcy and the effect thereof is found in the trustee's title. As is seen in (2) and (3) hereof the trustee's title rises no higher in this non-notification jurisdiction than that of any other good-faith assignee and it cannot set the prior good-faith assignments held by Standard Factors at naught. It follows here again that nothing "is left open to possible intervening rights."

Reliance on the thought that New Jersey would follow section 173 of the Restatement of the Law of Contracts is by no means a safe approach. In fact the Restatement admits that New Jersey is out of line with it. The pocket supplement for the New Jersey annotations on the subject says: "In Emley v. Perrine, 58 N.J.L. 472, 33 A. 951 (Sup Ct 1896) a subsequent assignee who obtained delivery of a tangible chose in action was held without rights in direct contradiction to subclause (IV). In Executors of Luse v. Park, 17 N.J.Eq 415 (Pr. 1864) there was dictum to the effect that the prior assignee prevails even though the second is paid." This it would seem is the present state of the law in this jurisdiction.

There remains one further proposition to be considered, not dealt with by the Referee or in the briefs. N.J.S.A. 2:41–1 authorizes assignments of choses in action and provides that the assignee may sue thereon in his own name " * * * but, in such action, there shall be allowed all set-offs, discounts and defenses, not only against the plaintiff, but also against the assignor before notice of such assignment shall be given to the defendant. * * *" This act authorizes assignments at law as well as in equity and it furnishes specific protection to the debtor defendant only. It can have no application here to vitiate the assignments to Standard Factors because when considered from all possible or reasonably imagined approaches it will be

---

a "The first and most elementary rule of construction is, that it is to be assumed that the words and phrases are used in their technical meaning if they have acquired one * * * and from this presumption it is not allowable to depart, unless adequate grounds are found

* * * ." Endlich on Interpretation of Statutes, Page 4. However, this is not of importance here since it is realized the Restatement deals with the obligor in its broader sense and it is but a text book, not a statute.

found not to weaken in anyway the position of the first assignee who is a holder in good faith.

While it is true that in the Corn Exchange Bank case, emphasis is placed on the intent of Congress to discourage secret transfers, it does not appear that the effect of such emphasis is intended to go so far as to strike down the law protecting prior assignees in non-notification jurisdictions. The opinion clearly indicates that the "standards" to be applied must be found in the "applicable state law."

For the foregoing reasons the order of the Referee dated February 23, 1945 will be set aside. Let an order be entered to that effect.